**SOMMERS OIL COMPANY,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 00–5066.

United States Court of Appeals,
Federal Circuit.

March 9, 2001.

Timothy M. O'Brien, Oliver Maner & Gray LLP, of Savannah, Georgia, argued for plaintiff-appellant. Of counsel was Patrick T. O'Connor.

Kathleen Z. Quill, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were David M. Cohen, Director;

and Harold D. Lester, Jr., Assistant Director.

Before CLEVENGER, SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

Sommers Oil Company ("Sommers") contends that agents of the United States seized and retained $41,000 in cash that belonged to Sommers. After unsuccessfully attempting to obtain the funds through administrative channels, Sommers filed suit in the United States Court of Federal Claims, arguing that it was entitled to the money on four legal theories, set forth in a four-count complaint. The Court of Federal Claims denied relief. The court dismissed two of the counts of Sommers' complaint for failure to state a claim on which relief could be granted. The court held that it did not have jurisdiction over the other two counts, and it transferred those claims to a United States District Court. Sommers has appealed the court's order with respect to the two counts of the complaint that the court dismissed for failure to state a claim. We reverse and remand for further proceedings.

I

The complaint alleged the following: Sommers is a Georgia corporation engaged in the wholesale and retail sale of petroleum products. In early 1992, Sommers' president, Jackie M. Sommers, Sr., agreed to cooperate with the Criminal Investigation Division (CID) of the Internal Revenue Service in an investigation of one Michael Vax. The investigation focused on Mr. Vax's alleged sale of gasoline and diesel fuel on which federal and state excise taxes had not been paid. During the investigation, Mr. Sommers revealed to Special Agent Gary Purvis of the CID that Mr. Vax had offered to sell him gasoline at four cents below the market price if Mr. Sommers would pay the cost of the gasoline, plus the required excise taxes, directly to Mr. Vax. Mr. Vax told Mr. Sommers that if at any time he could not supply Mr. Sommers with gasoline on those terms, Mr. Sommers could purchase gasoline from his normal suppliers and Mr. Vax would pay Mr. Sommers five cents per gallon for the purchases he was required to make from those suppliers. According to the complaint, Mr. Sommers advised Agent Purvis of the proposed scheme, and Agent Purvis and his "superiors within the CID agreed that the Sommers Oil Company could retain the reimbursements from Mr. Vax."

Pursuant to their agreement, Mr. Sommers received payments from Mr. Vax on several occasions, allegedly with the knowledge and acquiescence of the CID. In the fall of 1992, Mr. Vax was unable to provide gasoline Sommers needed, and Sommers purchased gasoline from one of its regular suppliers. In accordance with their five cent per gallon rebate agreement, Mr. Vax agreed to pay Sommers $60,000 in connection with those purchases. Mr. Vax paid a portion of that amount to Sommers directly, but when Mr. Vax was prepared to pay the $41,000 balance of that sum, the CID arranged for an IRS agent, posing as an agent for Sommers, to collect the money. When Mr. Sommers asked for the $41,000 from the IRS, the IRS allegedly advised him that it needed to retain the money for use as evidence against Mr. Vax.

When the criminal proceedings against Mr. Vax ended, Mr. Sommers again asked for the $41,000, but the IRS declined to give him the money. After exhausting his administrative remedies, Mr. Sommers filed suit in the Court of Federal Claims, arguing four theories of recovery: (1) that the government had taken his money for a public purpose without just compensation, in violation of the Takings Clause of the Fifth Amendment; (2) that the government had taken his money in violation of the Due Process Clause of the Fifth Amendment; (3) that the government had breached an implied-in-fact contract to deliver the money to Sommers; and (4) that the government should be deemed to be

holding the money in a constructive trust for Sommers.

The Court of Federal Claims held that it did not have jurisdiction over the due process and constructive trust counts of the complaint, and it transferred those claims to the United States District Court for the Southern District of Georgia. Those claims are not at issue in this appeal. The court further held that neither of the two remaining counts—claiming a compensable taking and a breach of contract—adequately stated a claim on which relief could be granted, and the court therefore dismissed those portions of the complaint under Rule 12(b)(4) of the Rules of the Court of Federal Claims. This appeal followed.

## II

■■■ When reviewing a dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(4) of the Rules of the United States Court of Federal Claims, which is the equivalent of Rule 12(b)(6) of the Federal Rules of Civil Procedure, we must accept as true all the factual allegations in the complaint, *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991), and we must indulge all reasonable inferences in favor of the non-movant, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998); *Highland Falls–Fort Montgomery Cent. Sch. Distr. v. United States,* 48 F.3d 1166, 1169–70 (Fed.Cir.1995). The question that the court must answer in reviewing a dismissal order in such a case is whether the trial court was correct in concluding that the facts asserted by the plaintiff do not entitle him to a legal remedy. *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed. Cir.2000). A trial court should not dismiss a complaint for failure to state a claim unless it is "beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Hamlet v. United States,* 873 F.2d 1414 (Fed.Cir.1989).

## A

■■■ In light of the above standards, Sommers' contract claim turns on the adequacy of its pleading. In order to state a claim for breach of an implied-in-fact contract by the United States, a plaintiff must allege a mutual intent to contract including an offer, an acceptance, and consideration. *See Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997); *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990). In addition, the plaintiff must allege facts sufficient to show that the government representative who entered into or ratified the alleged contract was authorized to bind the United States to the agreement in question. *See Trauma Serv. Group,* 104 F.3d at 1325.

■■■ The trial court concluded that Sommers' complaint falls short in several respects. None of the grounds invoked by the court, however, is sufficient to support dismissal at this preliminary stage. First, the court held that, as a matter of law, Sommers was not entitled to claim rights in property that was seized as evidence of criminal wrongdoing. To do so, the court held, would interfere with prosecutorial discretion in using the funds as evidence in a criminal case. Although that theory supports the government's claimed right to possession of the property while it is needed as evidence, it does not support the government's contention that Sommers may never have the funds, even after they are no longer needed in any criminal case. If, as Sommers alleges, it has a legal right to the funds as the product of a contractual undertaking by the government to turn those funds over to Sommers, the fact that the government had a temporary need to use the funds as evidence in a criminal case does not defeat Sommers' right to obtain the funds after the government no longer needs them. *See, e.g., United States v. Bein,* 214 F.3d 408, 411 (3d Cir. 2000) ("It is well settled that the Government may seize evidence for use in investigation and trial, but that it must return the property once the criminal proceedings

have concluded, unless it is contraband or subject to forfeiture."); *United States v. La Fatch,* 565 F.2d 81, 83 (6th Cir.1977) ("The general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated.").

■ The trial court's second ground for decision was that the government's alleged promise to permit Sommers to retain the $41,000 that the IRS obtained from Mr. Vax was not supported by consideration. While the complaint did not plead consideration in so many words, a reasonable inference from the facts alleged in the complaint is sufficient to establish an allegation of consideration. Indeed, the trial court construed the complaint to allege that the IRS agreed that Mr. Sommers "could retain the reimbursements from Mr. Vax if he agreed to cooperate with its investigation." Moreover, the complaint supports the inference that Mr. Sommers permitted an IRS agent to pick up the $41,000 in cash from Mr. Vax, representing himself to be an agent for Sommers, in exchange for the IRS's agreement that the money would be turned over to Sommers and not confiscated by the IRS. That agreement had value to the IRS because it allowed an IRS agent to be present when Mr. Vax turned over the funds, something that would be of potential value as evidence in a criminal case against Mr. Vax. Thus, the complaint adequately alleged consideration.

Finally, the trial court held that the complaint did not sufficiently allege that any of the government agents involved in the Vax investigation had legal authority to commit the government to the contractual undertaking that Sommers is trying to enforce. On this score, as on others, the complaint is not a model of pleading, as it does not specifically assert that the government's contractual commitment was made by a person with statutory or regulatory authority to do so. However, reading the complaint liberally and indulging all reasonable inferences from the allegations, as we are required to do, we conclude that the complaint alleges authorization sufficiently to withstand a motion to dismiss.

In particular, the complaint alleges that all of the acts complained of were committed by "duly authorized agents of the United States Department of Treasury, Internal Revenue Service." Moreover, the complaint alleged that when Mr. Sommers advised Agent Purvis of the five cents per gallon rebate that Mr. Vax offered to pay to Mr. Sommers, "Agent Purvis and Agent Purvis' superiors within the CID agreed that the Sommers Oil Company could retain the reimbursements from Mr. Vax." Mr. Vax made several rebate payments and, according to the complaint, the CID "knew of these reimbursements and acknowledged that those reimbursements were the rightful property of the Sommers Oil Company."

The reasonable inference from the allegations in the complaint is that either Agent Purvis or his superiors were authorized to engage in or approve the actions alleged in the complaint, specifically, to promise Mr. Sommers that he would be permitted to retain the $41,000 rebate from Mr. Vax as consideration for his cooperation in the undercover investigation. As noted, the complaint is rather indirect in the manner in which it sets forth that allegation, but it is sufficient, under the liberal standards applied to motions to dismiss, to entitle Sommers to attempt to prove its case.

■ The government argues that the complaint does not allege that Agent Purvis or his unnamed supervisors had either express or implied authority to bind the United States to the contractual undertaking alleged by Sommers. The government argues that in order to survive a motion to dismiss for lack of a sufficient allegation of authorization, the plaintiff would have had to plead "that portion of the Constitution, a regulation, or a statute that grants the Government official's authority in an unambiguous manner, including facts sufficient to show that the Government representative who allegedly

entered into a contract had actual authority to bind the government." In this case, according to the government, "that would require allegations of authority on the part of Agent Purvis or his unnamed supervisors sufficient to bind the Government to a contract promising not to confiscate criminal proceeds, with such authority considered an integral part of their duties." To the extent that the government means that Sommers was required to identify and plead the particular person who approved the contractual arrangement with Sommers and the particular statute or regulation that authorized that person to commit the government in contract, we disagree. It was sufficient for the complaint to allege that the government's promise was authorized by a person having legal authority to do so, and we hold that the complaint sufficiently made that allegation, even if inartfully.

Citing *Doe v. United States*, 100 F.3d 1576 (Fed.Cir.1996), the government argues that investigative agents such as Agent Purvis lack the authority necessary to bind the government to agreements such as the one alleged in this case. In *Doe*, an informant alleged that an implied-in-fact contract had been created when a Customs Service agent told the informant that he would be given a percentage of certain seized assets. The court held that the regulation cited by the claimant was insufficient to give the Customs agent actual authority to make the promise in question and that the agent likewise lacked implied authority to do so. *Doe*, however, was decided on summary judgment, not on a motion to dismiss. The claimant therefore had an opportunity to determine who within the government knew of the Customs agent's offer and whether that person had authority to bind the government in that fashion. The claimant failed to raise a genuine issue of material fact concerning the authority issue, particularly in light of the government's evidence that the government personnel who had authority to contract were unaware of the contract. Because this case was decided on the pleadings, there has been no similar opportunity for such a factual inquiry.

The government also relies on this court's decision in *Trauma Service Group v. United States*, 104 F.3d 1321 (Fed.Cir. 1997), which involved a claim by TSG, a private health care organization, that the government had entered into an implied-in-fact contract to pay for the services of an x-ray technician for a government medical program. The complaint alleged that the head of the government medical treatment facility, Colonel Perugini, was a contracting officer and therefore had the authority to obligate the government in an employment contract. *See* 104 F.3d at 1327 n. 4. The court concluded, however, that the statutory provisions relied upon by TSG to support its claim required Colonel Perugini to submit the type of contract at issue to superior officers for approval. Furthermore, the court noted that "TSG did not allege that the implied-in-fact contract was submitted for approval as required." Thus, TSG's complaint stood or fell on Col. Perugini's own admittedly insufficient authority to contract. Because TSG's theory of authorization was legally flawed, the court was able to determine that it was "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). That is, it was clear to the court that TSG's claim was "fatally flawed in [its] legal premises and destined to fail," *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed.Cir.1993), and it was appropriate to dismiss the complaint and "streamline [the] litigation by dispensing with needless discovery and factfinding," *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

In this case, no such dispositive legal issue is presented. The allegation of authorization is general, but it is not surprising under the circumstances that Sommers was not more explicit in its allegations of authorization. Persons who cooperate in

criminal investigations typically deal with the investigating agents and not with their superiors, and may often be unaware of what level of authority is required to commit the government to contractual undertakings. Sommers has alleged both that Purvis had authority to contract and that one of his superiors with such authority ratified the contract, and there is nothing in the record to indicate that either Agent Purvis or his superiors lacked such authority. While it is true that such cooperating witnesses may be taking the risk that their arrangements with the government will not be enforceable if the arrangements turn out not to be authorized at the appropriate level within the government, that does not justify holding that they cannot survive a motion to dismiss unless they know what government official actually authorized the arrangement and what regulatory or statutory provision authorized that official to do so. We therefore hold that the complaint in this case was sufficient to state a claim for a breach of contract by the government.

### B

In addition to the contract claim, Sommers argues that the government's appropriation of the $41,000 constituted a taking for a public purpose for which Sommers did not receive just compensation, and thus constituted a violation of the Taking Clause of the Fifth Amendment. In the trial court as well as in this court (in its opening brief), Sommers argued that it has a property interest in the $41,000 because the CID, through its authorized agents, conveyed to Sommers the right to the $41,000 "in consideration for Mr. Sommers' invaluable cooperation in the criminal in-

vestigation of the gas scheme." Thus, Sommers has identified its property interest in the money as the product of the contract between Sommers and the government. Noting that the taking claim was premised on the rights emanating from the contract, the trial court dismissed the taking claim on the ground that "no enforceable contract arose" between the parties. Because we have reversed the court's ruling dismissing the contract claim, on which its ruling on the taking claim was based, we reverse the dismissal of the taking claim as well.

### C

In its brief on appeal, Sommers raises a third theory of liability, claiming that the government is liable for the $41,000 on an "illegal exaction" theory. Under that theory, a plaintiff may seek recovery of money that "the government has required to be paid contrary to law." *Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1572 (Fed.Cir.1996). That theory, however, was not pleaded in the complaint, is not fairly comprised within any of the four counts pleaded in the complaint, and was not addressed by the trial court. Because the illegal exaction theory was not presented to the trial court in Sommers' complaint, we decline to hold that the trial court erred by failing to rule that the complaint adequately stated a claim under that theory. The case is therefore remanded only on the counts alleging contract and takings theories of liability.

*REVERSED and REMANDED.*