Stephen E. BOONE, Jr., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 02–345C.

United States Court of Federal Claims.

Sept. 20, 2002.

Stephen E. Boone, Jr., pro se, Fort Leavenworth, KS.

David R. Feniger, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant, Lieutenant Colonel Tara Osborn and Captain David Mendelson, United States Army, of counsel.

---

## ORDER

MILLER, Judge.

Proceeding *pro se,* plaintiff claims that he is due back pay for the period after his enlistment expired and while he was awaiting court-martial and a correction of his records to reflect that he became a reservist after his enlistment expired. Defendant interposes a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6).[1] Although plaintiff has moved for summary judgment, the court deems, having considered all the briefs filed by both parties, that the case should be resolved based on defendant's motion. Argument is deemed unnecessary.

## FACTS

The facts germane to defendant's motion are undisputed and are drawn from the complaint and attachments thereto, although certain matters of procedural history have been supplied from the record. *See* RCFC 10(c). On September 29, 1987, Stephen E. Boone, Jr. ("plaintiff"), executed an Enlistment Document with the United States Army (the "Army"). In accordance with plaintiff's options under the Enlistment Document, plaintiff formally enlisted in the regular component of the Army on October 15, 1987. Plaintiff committed to four years with the Army, thereby rendering October 15, 1991, the expected termination date of his enlistment.

While serving on active duty, plaintiff's superiors "flagged" plaintiff while investigating rape charges against him.[2] On September 3, 1991, the Army preferred one charge of rape against plaintiff and, on September 20, 1991, placed him in pre-trial confinement. On September 23, 1991, and November 6, 1991, the Army preferred, respectively, a charge of attempted rape and another charge of rape against plaintiff.

During January 1992 a general court-martial tried and convicted plaintiff of all charges preferred against him. On January 31, 1992, plaintiff was sentenced to 60 years in prison, a dishonorable discharge, a reduction to Private E1 status, and forfeiture of all pay and allowances. The military convening authority approved the sentence on November 9, 1992, but suspended for one year the incarceration period in excess of 50 years. Plaintiff's appeals twice made their way to the United States Court of Appeals for the Armed Forces, and that court, in September 1998, returned the case record to the Judge Advocate General for a sentencing rehearing.[3] *See United States v. Boone,* 49 M.J. 187, 199 (C.A.A.F.1998).

The rehearing was conducted on March 15, 1999, with a military judge reducing the incarceration period to 39 years. However, the judge upheld the dishonorable discharge, the grade reduction, and the forfeiture of all pay and allowances. The convening authority approved this revised sentence on August 31, 1999, and the United States Army Court of Criminal Appeals affirmed the sentence on January 11, 2000.

After his new sentence was affirmed, plaintiff filed an action in the United States District Court for the District of Columbia seeking $4.5 million allegedly owed him in back pay and for constitutional violations allegedly committed by the Secretary of the Army. *Boone v. Caldera, et al.,* No. 00–2591(RWR), slip op. (D.D.C. Mar. 25, 2002). The district court construed plaintiff's constitutional claim as a civil action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and dismissed the com-

---

**1.** RCFC 12(b)(6) was formerly codified as RUSCC 12(b)(4). The court's rules were revised on May 1, 2002.

**2.** According to Army Regulation ("AR") 600–8–2, the Army will issue a flag "when an unfavorable action or investigation (formal or informal) is started against a soldier by military or civilian authorities." AR 600–8–2 § 1–11 (Nov. 30, 1987). The Army requires that a flag be issued against a soldier for certain "adverse actions,"

including an investigation or a court-martial. § 1–12(a)(1), (2). The purpose of the flagging system is "to guard against the accidental execution of specified favorable personnel actions for soldiers not in good standing." § 1–8.

**3.** Plaintiff's appeals concerned the effectiveness of his trial counsel, an issue that is not before this court. *See Boone,* 49 M.J. at 189; *United States v. Boone,* 42 M.J. 308, 309 (C.A.A.F.1995).

plaint for lack of subject matter jurisdiction. *Boone v. Caldera,* slip op. at 5–6. The district court noted that plaintiff could seek redress in this court for his military back pay claim. *Id.* at 3 n. 6.

Plaintiff filed the instant action on April 22, 2002, and his complaint seeks two forms of relief: 1) back pay allegedly accrued while he was in pre-trial confinement awaiting court-martial, and 2) correction of his records to reflect four years of active duty and four years of reserve service.[4]

### DISCUSSION

#### 1. *Standard of review*

When a federal court reviews the sufficiency of the complaint for failure to state a claim, "its task is necessarily a limited one." *Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002) (*quoting Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. This court adheres to "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Conti v. United States,* 291 F.3d 1334, 1338 (Fed.Cir.2002). Under RCFC 12(b)(6), the court must accept as true the facts alleged in the complaint, *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), and must construe all reasonable inferences in favor of the non-movant. *Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed.Cir.2001). Therefore, this court must deny a motion under RCFC 12(b)(6) if relief can be granted "under any set of facts that could be proved consistent with the allegations." *NOW, Inc. v. Scheidler,* 510 U.S. 249,

256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

As plaintiff is a *pro se* litigant, the court holds him to a less stringent standard than pleadings filed by a member of the bar. *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). The United States Court of Claims approved of straining the court's "proper role in adversary proceedings to the limit, [to search the] record to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 188 Ct.Cl. 456, 468, 412 F.2d 1285, 1292 (1969). However, while "the fact that [a plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, . . . it does not excuse its failures, if such there be." *Henke v. United States,* 60 F.3d 795, 799 (Fed.Cir.1995). Although plaintiff is given some leniency in presenting his case, his *pro se* status does not render him immune from pleading facts upon which a valid claim can rest. *See, e.g. Ledford v. United States,* 297 F.3d 1378, 1382 (Fed.Cir.2002) (affirming the dismissal of *pro se* plaintiff's complaint which sought, *inter alia,* a tax refund); *Constant v. United States,* 929 F.2d 654, 658 (Fed.Cir. 1991) (sanctioning *pro se* plaintiff for filing a frivolous appeal). As this court stated in *Demes v. United States,* "[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from a finder of fact to advocate." 52 Fed.Cl. 365, 369 (2002).

#### 2. *Plaintiff's back pay claims*

Plaintiff contends that two statutes, 37 U.S.C. § 204(a) (2002), and 37 U.S.C. § 206(a) (2002), entitle him to back pay. Although plaintiff's complaint offers several different periods during which the Army allegedly withheld compensation, plaintiff's most recent filings reveal that the Army owes him back pay only from October 15, 1991, to

---

4. Although defendant's motion to dismiss construed the complaint as challenging the jurisdiction of the plaintiff's court-martial, plaintiff maintains that the "sole intent of the . . . complaint is to recover money, and . . . [p]laintiff's

claims of the moment neither imply [ ] nor suggest a challenge to the courts-martial [sic] conviction." Pl.'s Br. filed Aug. 1, 2002, at 3 (internal quotation marks and underlining omitted).

November 8, 1992.[5] *See* Pl.'s Br. filed Aug. 1, 2002, at 6–7; Pl.'s Br. filed Sept. 10, 2002, at 4. The issue will be confined to the period from October 15, 1991, to November 8, 1992.

■ It is well settled that the "rights and benefits of a member of the military services, including pay and allowances, are defined by statute." *Dock v. United States,* 46 F.3d 1083, 1086 (Fed.Cir.1995). Accordingly, "common-law rules governing private contracts have no place in the area of military pay." *Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961). The relevant statutory language thus determines the validity of plaintiff's back pay claim under section 204(a) and section 206(a). The court addresses each statute in turn.

1) *Entitlement to active duty pay under 37 U.S.C. § 204(a)*

■ Plaintiff first asserts that section 204(a) supports his back pay claim. Section 204(a)(1) states that "a member of a uniformed service who is on active duty" is "entitled to the basic pay of the pay grade to which [he or she is] assigned. . . ." Therefore, plaintiff must show that he was on active duty from October 15, 1991, until November 8, 1992, in order to be eligible for back pay under section 204(a).

Plaintiff clouds the issue of whether he was on active duty during the relevant period by presenting multiple characterizations of his commitment to the Army. In his response to defendant's motion to dismiss, plaintiff contends that the "plain language" of the Enlistment Document "clearly confirms" that he was on active duty from October 15, 1987, until October 15, 1991, and was on "inactive reserve duty" from October 15, 1991, until October 15, 1995. Pl.'s Br. filed Aug. 1, 2002, at 5. However, in his sur-reply, plaintiff

claims that he was on reserve status from September 29, 1987, until October 15, 1987, and from October 15, 1991, until September 29, 1995. *See* Pl.'s Brief filed Sept. 10, 2002, at 3. From October 15, 1987, until October 15, 1991, plaintiff states that he was a "reservist on active duty." *Id.*

The Enlistment Document shows that plaintiff began active duty on October 15, 1987 with an enlistment termination date of October 15, 1991. Paragraph 8 of the Enlistment Document committed plaintiff to eight years in the Army Reserves through the Delayed Entry/Enlistment Program (the "DEP"), unless plaintiff appeared for active duly on October 15, 1987. Plaintiff appeared for active duty training on October 15, 1987, as he executed paragraph 20(a) of the Enlistment Document on that date. Paragraph 20(a) reads: "I request to be discharged from the . . . DEP and enlisted in the Regular Component of the United States Army for a period of 4 years. . . ." Compl., Attach. 1. Paragraph 21(a) confirms that plaintiff, on October 15, 1987, was "discharged from the Reserve Component . . . and [was] accepted for enlistment in the Regular Component of the United States Army in pay grade E–1." *Id.* Because plaintiff's commitment to the regular component of the Army was four years, the expected termination date of his active duty status was October 15, 1991.

Plaintiff must show that he was on active duty to recover back pay under section 204(a), as a servicemember is not entitled to section 204 pay after the termination of his or her active duty enlistment. *James v. Caldera,* 159 F.3d 573, 581 (Fed.Cir.1998); *Dodson v. United States,* 988 F.2d 1199, 1208 (Fed.Cir.1993). The Enlistment Document specifies that plaintiff's enlistment terminat-

---

**5.** Plaintiff claims that he is owed back pay from October 15, 1991, to March 15, 1999, *see* Compl. filed Apr. 22, 2002, at 2, but retracts his post-November 8, 1992 back pay demand in his response to defendant's motion to dismiss. *See* Pl.'s Br. filed Aug. 1, 2002, at 6. Moreover, under the Uniform Code of Military Justice, any forfeiture of pay or allowances included in a court-martial sentence takes effect on the earlier of 1) 14 days after the sentence is adjudged or 2) the date when the sentence is approved by the convening authority. 10 U.S.C. § 857(a)(1)(A), (B)

(2002). Plaintiff's sentence was adjudged on January 31, 1992, and the convening authority approved the forfeiture of plaintiff's pay and allowances on November 9, 1992. *See* Compl., Attach. 5. Therefore, plaintiff's forfeiture of pay and allowances took effect on February 14, 1992. § 857(a)(1)(A). Although the court is perplexed by plaintiff's choice of November 8, 1992, as the cut-off date for the back pay allegedly owed, the court's denial of back pay renders this choice immaterial. *See* Pl.'s Br. filed Aug. 1, 2002, at 7.

ed four years after October 15, 1987; therefore, he was ineligible to receive section 204 pay on or after October 15, 1991. If plaintiff had argued that he was denied back pay before October 15, 1991, then section 204(a) might provide him some relief. However, in none of his numerous allegations or arguments does plaintiff claim that he was owed back pay before this date. Plaintiff's active duty enlistment ended on October 15, 1991, so he has no claim under section 204(a). *See Paalan v. United States*, 51 Fed.Cl. 738, 744–45, 753 (2002)

Moreover, the Department of Defense Military Pay and Allowances Entitlements Manual ("DODPM") limits the military's obligation to pay active duty servicemembers in certain situations.[6] For example, chapter 3, § 10317(d) (Mar. 9, 1987), mandates that, if a soldier is confined while awaiting court-martial, his or her "pay and allowances end on the date the enlistment expires." *See Paalan*, 51 Fed.Cl. at 745 (ruling that section 10317 entitles an incarcerated servicemember to receive pay only until the end of his or her enlistment term). Plaintiff was placed in pre-trial confinement on September 20, 1991, and his initial sentence was adjudged on January 31, 1992. His enlistment terminated on October 15, 1991. Therefore, section 10317(d) applies to plaintiff from the time

that he entered pre-trial confinement to his enlistment termination date.[7]

Section 10317(d) also precludes plaintiff from recovering back pay after his enlistment termination date of October 15, 1991.

### 2) *Entitlement to reservist pay under 37 U.S.C. § 206(a)*

■ In his sur-reply plaintiff contends, for the first time, that he is entitled to reservist pay under section 206(a). In consideration of plaintiff's pursuing this case *pro se*, the court will entertain this claim. *See Ruderer*, 188 Ct.Cl. at 468, 412 F.2d at 1292.

Subject to certain criteria, section 206(a) grants reserve pay to individuals who are not entitled to active duty pay under section 204 and who are serving in the National Guard or in a "reserve component of a uniformed service." Plaintiff attempts to argue that he was on reserve status from September 29,- 1987, to September 29, 1995. While plaintiff, in fact, was serving in the regular component of the Army from October 15, 1987, until October 15, 1991, plaintiff asserts that, by virtue of the Enlistment Document, he automatically became a reservist on October 15, 1991, and therefore is entitled to back pay from that date until November 8, 1992.

Assuming that plaintiff did become a reservist on October 15, 1991,[8] is not entitled to

---

6. The DODPM was in effect from March 9, 1987, to January 1, 1993. As plaintiff claims back pay for 1991 and 1992, the DODPM governs those claims.

7. Plaintiff also appears to argue that 10 U.S.C. § 875(a) (2002), should afford him some relief because his initial sentence was reversed by the United States Court of Appeals for the Armed Forces. *See Boone*, 49 M.J. at 199. Section 875(a) authorizes the restoration of "property affected by an executed part of a court-martial sentence which has been set aside or disapproved ... unless a new trial or rehearing is ordered and such executed part is included in a sentence imposed upon the new trial or rehearing." Although plaintiff's initial sentence was set aside after his appeals, both his vacated and revised sentence mandated a forfeiture of pay and allowances. *See* Compl, Attach. 5. Section 875(a) allows only the restoration of benefits that were part of an original, but not a revised, court-martial sentence. *Liggan v. United States*, 52 Fed.Cl. 395, 398–99 (2002); *Armstrong v. United States*, 121 F.3d 667, 669 (Fed.Cir.1997); *Dock*, 46 F.3d at 1087. Because plaintiff was ordered to forfeit all pay and allowances in both his

original and his revised court-martial sentences, section 875(a) is inapplicable to plaintiff's claim for back pay.

8. Plaintiff insists that the Enlistment Document automatically granted him reserve status on or after October 15, 1991. *See* Pl.'s Brief filed Sept. 10, 2002, at 3. Plaintiff apparently believes that the termination of an active duty serviceperson's enlistment places him or her immediately into reserve status. Plaintiff's argument is without a legal basis. First, no person has the "right to enlist in the armed forces, unless specially given one by statute or regulation." *Dodson v. United States*, 988 F.2d 1199, 1203–04 (Fed.Cir.1993). *Dock*, 46 F.3d at 1086. Second, AR § 635–200 prohibits a soldier awaiting trial, who would otherwise be eligible for discharge from active duty status, from being discharged until final disposition of the court-martial proceedings. AR 635–200 § 1–24(b) (Oct. 17, 1990). Therefore, while the Army's obligation to pay plaintiff terminated at the end of his enlistment period, plaintiff's assertion that the Enlistment Document assured him reserve status as of October 15, 1991, is misplaced. *See* § 204(a); § 10317(d); *Paalan*, 51 Fed.Cl. at 745.

reserve pay under section 206. Section 206(a) allows payment for, *inter alia*, "the performance of ... training, instruction, [or] duty," or for duties that a reservist cannot perform because of an injury, illness or disease incurred in specified, on-the-job situations. § 206(a)(2), (3). Therefore, section 206(a) allows back pay in two situations: 1) for work actually performed by a reservist and 2) for constructive performance "only for instruction missed due to some physical disabilities." *Dehne v. United States*, 970 F.2d 890, 893 (Fed.Cir.1992); *see also Sanford v. United States*, 32 Fed.Cl. 363, 366 (1994). Indeed, "a reservist is not entitled to compensation at the prescribed rate unless he is ordered to perform and actually performs the work. Compensation is not based on status as a reservist." *Ayala v. United States*, 16 Cl.Ct. 1, 4 (1988) (*citing United States v. Wickersham*, 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798 (1906)). If a reservist has performed no actual reserve duties, then he or she has no lawful pay claim against the United States "whether the failure to drill was by election of the member, or by decision of the service involved." *Palmer v. United States*, 168 F.3d 1310, 1314 (Fed.Cir. 1999).

It is beyond dispute that plaintiff did not perform any of the duties after October 15, 1991, which would have entitled him to section 206 pay. Because plaintiff has been in pre-trial confinement since September 20, 1991, he was incapable of engaging in any reservist activities. Moreover, he did not qualify for any of the statutory exceptions which would entitle him to credit for constructive service under section 206. Plaintiff's claim for reservist pay under 37 U.S.C. § 206(a) therefore must be denied.

### 3. *Correction of plaintiff's military records*

Plaintiff requests that this court order a correction to plaintiff's records to reflect "placement in [plaintiff's] proper status, a U.S. Army Reservist" for the period spanning October 15, 1991, to November 8, 1992. Pl.'s Br. filed Sept. 10, 2002, at 4.

The Tucker Act provides for implementation of equitable relief. *See* 28 U.S.C. § 1491(a)(2) (2002). As a predicate for correction of his records, plaintiff first must establish a successful monetary claim against the United States. *See Bobula v. United States*, 970 F.2d 854, 859 (Fed.Cir.1992) ("[w]hile limited equitable relief is sometimes available in Tucker Act suits, the equitable relief must be incidental to and collateral to a claim for money damages."). The court has concluded that plaintiff is not entitled to relief under 37 U.S.C. § 204(a) or 37 U.S.C. § 206(a), so the court cannot grant plaintiff's request for a correction to his records.

### CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted. The Clerk of the Court shall dismiss the complaint with prejudice for failure to state a claim on which relief can be granted.

**IT IS SO ORDERED.**

No costs.