## INTERNATIONAL INDUSTRIAL PARK, INC., Plaintiff,

v.

## The UNITED STATES, Defendant.

### No. 06–876L.

United States Court of Federal Claims.

Feb. 22, 2008.

Roger J. Marzulla, with whom were Nancie G. Marzulla, and Gregory T. Jaeger, Marzulla & Marzulla, Washington, D.C., for Plaintiff.

Susan V. Cook, with whom were Ronald J. Tenpas, Assistant Attorney General, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C., Melissa Erney and A. Ted Kundrat, U.S. Customs and Border Protection, Indianapolis, Indiana, of counsel, for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

This case is before the Court on Defendant's motion to dismiss, or in the alternative, for summary judgment. The case presents Fifth Amendment taking issues arising from the activities of the United States Border Patrol ("Border Patrol") on Plaintiff's 100–acre property, located in southern California near the border with Mexico. Plaintiff, International Industrial Park, Inc. ("IIP"), alleges that agents of the Border Patrol have entered IIP's property for many years in pursuit of illegal immigrants for roundup and arrest. IIP asserts that the Border Patrol's activities on its property have intensified since September 11, 2001, as law enforcement officials have expanded their efforts to prevent terrorism in the United States. IIP claims that the Border Patrol's conduct constitutes a physical taking of its property, entitling IIP to just compensation under the Fifth Amendment. IIP filed its complaint in this Court on December 22, 2006.

Defendant has moved to dismiss IIP's complaint under Rule 12(b)(1) for lack of subject matter jurisdiction, arguing that the activities of which IIP complains have been ongoing for more than six years prior to the filing of this action, and therefore the complaint is barred by the applicable six-year statute of limitations. See 28 U.S.C. § 2501. Defendant also contends under Rule 12(b)(6) that IIP has failed to state a claim upon which relief can be granted. Defendant states that IIP does not have a property right protected by the Fifth Amendment to exclude Border Patrol agents from its property, and that entry upon the property in pursuit of illegal immigrants is an exercise of the United States' police power, which does not give rise to a compensable claim. Defendant has moved in the alternative for summary judgment under Rule 56.

IIP opposes Defendant's motion, arguing that the expansion of Border Patrol activities on its property since September 11,

2001 constitutes a new basis for suit. Based upon the declaration of David Wick, the property's manager, and other supporting documents, IIP points to the completion of border fencing that has the effect of funneling illegal immigrants onto IIP's property. IIP also alleges that the Border Patrol has graded roads on the property, and has engaged in conduct that has become a continuous presence and occupation rather than an occasional entry. Mr. Wick's declaration refers to intrusive Border Patrol activities that have disrupted projects on the property, and prevented IIP from leasing or selling the property to others. IIP disagrees that such conduct constitutes a reasonable exercise of police power, and asserts that it is entitled to a trial on the merits of its taking claim.

Defendant filed its motion on October 16, 2007. Plaintiff filed its opposition to Defendant's motion on November 21, 2007, as corrected on November 30, 2007, and Defendant filed its reply on December 21, 2007. Both parties have submitted exhibits with their filings that include a number of declarations and excerpts of depositions. The Court heard oral argument on January 29, 2008.

For the reasons explained below, the Court concludes that Defendant's motion to dismiss, or in the alternative, for summary judgment, should be denied. After considering the evidence presented by the parties, and accepting Plaintiff's allegations as true where appropriate, the Court finds that: (1) Plaintiff's taking claims are not time-barred; (2) Plaintiff has stated a claim upon which relief can be granted; and (3) genuine issues of fact exist on whether the Border Patrol's actions constitute a compensable taking of Plaintiff's property.

### Factual Background [1]

IIP's property consists of a 100–acre tract of largely unimproved land near the border between the United States and Mexico. The parties refer to the property as "Parcel 11," and it is located east of San Diego, California in a sparsely populated area known as East Otay Mesa, at the base of the Otay Mountains. Parcel 11 is approximately 14 miles

1. The facts set forth in this opinion do not constitute findings of fact by the Court. The facts cited are either undisputed, or accepted by the Court after considering the allegations and evidence submitted by the parties.

from the Pacific Ocean. The southern boundary of Parcel 11 is 1.56 miles from the U.S./Mexico border. To the south, directly across the border is the densely populated city of Tijuana.

Plaintiff acquired Parcel 11 in 1983 under the name of 275 Corporation. In 1987, the name changed to Rancho De La Fuente, and in 1992 to International Industrial Park, Inc. The officers of IIP are Roque De La Fuente and his mother, Bertha De La Fuente. Parcel 11 is designated on San Diego County's Regional Plan for heavy industrial development, such as rock crushing, power generation, auto salvage, recycling, or other uses that typically are located outside of population centers. Since acquiring the property, Plaintiff planned to lease Parcel 11 to suitable entities engaged in specialized industrial uses when market conditions became advantageous. To date, Plaintiff has leased Parcel 11 for dry farming, equipment storage, or other industrial purposes. Parcel 11 is managed by SD Commercial, LLC, owned by David Wick and three trusts in the names of Mr. De La Fuente's children.

The United States Border Patrol is part of the Department of Homeland Security, Bureau of Customs and Border Protection, and is the lead federal agency charged with securing the international border between the United States and Mexico. Border Patrol operations are divided into sectors. The San Diego Sector Office is responsible for an area north of Tijuana and Tecate, Mexico, cities with a combined population of two million people. The mission of the Border Patrol is to prevent, detect or apprehend persons seeking to enter the United States illegally at places not officially designated as Ports of Entry. Parcel 11 is within the patrol responsibility of the Chula Vista Station, one of the stations under the jurisdiction of the Border Patrol's San Diego Sector Office.

The United States owns an easement providing the Border Patrol with the right to cross the northern portion of Parcel 11 from Alta Road to the Otay Truck Trail, also known as the Otay Mountain Road. The Bureau of Land Management acquired this easement in 1989 from Mr. De La Fuente. In 1996–97, the Government made approxi-

mately $5 million in improvements to the Otay Truck Trail, to provide the Border Patrol with all weather road access to the Otay Mountain area.

Prior to 1990, the international border near San Diego was poorly marked and presented no real barrier to entry. Many areas were unfenced, or in some locations there were only agricultural fences. In 1990, the Border Patrol, with the assistance of the National Guard, began construction of the San Diego Border Primary Fence that now stretches from the Pacific Ocean 14 miles eastward toward Parcel 11. The Primary Fence is approximately ten feet high and is constructed of steel matting. Defendant states that the Border Patrol completed the Primary Fence in 1993.

In 1994, the Border Patrol began the "Operation Gatekeeper" program, which involved large increases in the number of agents assigned to the San Diego Sector, and the deployment of Border Patrol agents directly along the border. The agents began using more sophisticated equipment, such as night vision goggles, additional seismic sensors, and portable lighting platforms. The goal of Operation Gatekeeper, in conjunction with the Primary Fence, was to direct illegal entry traffic away from the population centers of San Diego and Tijuana to the east, where Border Patrol agents would have a greater tactical advantage.

In 1993, the Sandia National Laboratory completed a study recommending the use of heavily patrolled multiple barriers in urban areas to discourage illegal entries, and instead to direct any attempted entries to more rugged terrain. In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act, which authorized the construction of a second layer of steel mesh fencing in the San Diego area to buttress the Primary Fence. Pub.L. No. 104–208, § 102. The new law provided for construction of two adjacent roads on either side of the Secondary Fence, and for the use of surveillance cameras and security lighting to be constructed on poles between the two fences.

The Border Patrol began construction of the Secondary Fence in 1996. The Secondary Fence is made of steel mesh, and is located approximately 130–150 feet north of the Primary Fence. The Secondary Fence begins three miles from the Pacific Ocean and extends eastward. IIP alleges that the Border Patrol completed portions of the Secondary Fence in segments: (1) by 2000, it had constructed a 6,129–foot section to the south of Parcel 11, with openings at either end; (2) in 2001, it constructed a 1,722–foot section, cutting off the western access to a populated area; and (3) in 2006, it constructed a 674–foot section to close off a gap in the Secondary Fence completed in 2000 and 2001. Defendant states that nine of the proposed 14 miles of Secondary Fence had been completed by February 2004, with a remaining 1.5 mile section on the eastern end scheduled to be completed in 2011. IIP asserts that the fence construction creates a "funneling effect" to channel illegal immigrants eastward away from San Diego, and north onto Parcel 11 where Border Patrol agents await to apprehend and arrest them.

Following the terrorist attacks in the United States on September 11, 2001, the Department of Homeland Security directed the Border Patrol to formulate a new strategy for securing the nation's borders. A primary goal of the Border Patrol's strategy was to prevent the entry of terrorists into the United States. In March 2005, the Border Patrol introduced a new plan, which included as one of its main objectives the deterrence of illegal entries through improved and enhanced enforcement activities.

As a result of these initiatives since September 11, 2001, IIP states that Border Patrol agents occupy Parcel 11 on an around-the-clock basis. Mr. Wick states in his declaration that Border Patrol vehicles speed across roads on IIP's property, and that vans or buses are brought in to haul away the illegal aliens. He further states that Border Patrol agents fan out over Parcel 11 on all-terrain vehicles, on horseback, or on foot in an effort to apprehend illegal immigrants. Mr. Wick complains that Border Patrol agents even stop and question him, as well as contractors or employees, as they go about their business on the property. He says that he often is stopped while showing the property to potential buyers or lessees. IIP alleges that the Border Patrol has cut open locked gates, and has graded its own roads on the property. IIP asserts that the Border Patrol has damaged Parcel 11's environmentally sensitive areas, and interfered with construction projects. Mr. Wick states that the Border Patrol has declined offers to lease portions of the property for its law enforcement activities, or to discuss the granting of further easements.

Defendant has offered apprehension statistics from the Chula Vista Station from 1992 to 2007 to show that the Border Patrol's activities in the vicinity of Parcel 11 actually have declined over time, and that therefore the Border Patrol conduct that IIP complains of is no worse in the past six years than it was previously. This contention assumes, however, that a correlation exists between the number of annual apprehensions in the Chula Vista Station and the level of Border Patrol activity on Parcel 11. It may be equally plausible that increased Border Patrol activity in the vicinity of Parcel 11 has led to a reduction in the number of persons attempting to enter the United States in that area. Without more, the Court is unwilling to draw the causal connection Defendant suggests from the apprehension statistics. The relevant inquiry is to determine the Border Patrol's activity on IIP's property.

### Standards of Review

A. *Rule 12(b)(1)—Motion to Dismiss for Lack of Subject Matter Jurisdiction*

 The applicable statute of limitations provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501; *see also Frazer v. United States*, 288 F.3d 1347, 1351 (Fed.Cir.2002). This statute is jurisdictional and thus is strictly construed. *Bowen v. United States*, 292 F.3d 1383, 1385 (Fed.Cir.2002); *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed.Cir.1988). Consequently, compliance with 28 U.S.C. § 2501 is a prerequisite to the Court's subject matter jurisdiction in takings

cases. *John R. Sand & Gravel Co. v. United States,* 457 F.3d 1345, 1354 (Fed.Cir.2006), *aff'd,* —— U.S. ——, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008) ("The six-year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims.").

In deciding a motion to dismiss for lack of subject matter jurisdiction where the movant challenges the sufficiency of the pleadings, the court accepts as true the complaint's undisputed factual allegations and construes the facts in the light most favorable to the plaintiff. *Figueroa v. United States,* 57 Fed. Cl. 488, 492 (2003) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). However, if a motion to dismiss challenges the truth of the jurisdictional facts alleged in the complaint, those allegations are not controlling, and only the uncontroverted factual allegations are accepted as true for purposes of the motion. *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583–84 (Fed.Cir.1993). Consequently, "[a]ll other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court." *Id.* at 1584. Where a motion to dismiss challenges the truth of the jurisdictional facts alleged in the complaint, the court is not restricted to the face of the pleadings, but may consider all relevant evidence in order to resolve the factual dispute. *Ferreiro v. United States,* 350 F.3d 1318, 1324 (Fed.Cir. 2003); *Figueroa,* 57 Fed.Cl. at 492 (citing *Rocovich v. United States,* 933 F.2d 991, 994 (Fed.Cir.1991)). The court may, for example, consider affidavits and deposition testimony offered by the parties. *Cedars–Sinai Med. Ctr.,* 11 F.3d at 1584.

On a motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction bears the burden of proof by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988) (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). However, the party asserting jurisdiction must make only a *prima facie* showing of jurisdictional facts in its pleadings to defeat a motion to dismiss. *Figueroa,* 57 Fed.Cl. at 492. If the undisputed facts reveal any possible bases on which the non-moving party might prevail, the court must deny the motion. *Id.* (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). At this stage, the court need not decide "whether a plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claims." *Hansen v. United States,* 65 Fed.Cl. 76, 94 (2005) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683).

### B. Rule 12(b)(6)—Motion To Dismiss For Failure To State a Claim Upon Which Relief May Be Granted

"The Court of Federal Claims may grant a motion to dismiss for failure to state a claim upon which relief may be granted where the plaintiff can prove no set of facts that would support its claim." *N.Y. Life Ins. Co. v. United States,* 190 F.3d 1372, 1377–78 (Fed. Cir.1999). When reviewing a motion to dismiss under Rule 12(b)(6), the court "must accept as true all the factual allegations in the complaint, and [the court] must indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed.Cir.2001) (citations omitted); *see also Huntleigh USA Corp. v. United States,* 63 Fed.Cl. 440, 443 (2005). Courts have complete discretion in determining whether or not to accept evidence outside the pleadings. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed.2007). This discretion generally is exercised when the proffered material is "likely to facilitate the disposition of the action." *Id.* When the court considers evidence outside of the pleadings, a defendant's motion to dismiss under Rule 12(b)(6) is treated as a motion for summary judgment under Rule 56. *Brubaker Amusement Co., Inc. v. United States,* 304 F.3d 1349, 1355 (Fed.Cir.2002); RCFC 12(c).

### C. Rule 56—Motion for Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986); *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1323 (Fed.Cir.2001). Summary judgment will not be granted if "the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Eli Lilly and Co. v. Barr Labs., Inc.,* 251 F.3d 955, 971 (Fed.Cir.2001).

In reviewing a motion for summary judgment, the benefit of all presumptions and factual inferences run in favor of the non-moving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Lathan Co., Inc. v. United States,* 20 Cl.Ct. 122, 125 (1990) ("When deciding whether summary judgment is appropriate, this court resolves factual disputes against the movant."). The moving party bears the initial burden of showing an absence of evidence to support the opposing party's case. The non-movant must come forward with specific facts that give rise to genuine issues of material facts. *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. 1348; RCFC 56(e). Disputes over facts that might affect the outcome of the case are considered "material." *See Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. 2505. If the non-moving party produces sufficient evidence to raise a genuine issue of fact material to the outcome of the case, the motion for summary judgment should be denied. *Id.* at 248, 106 S.Ct. 2505.

Special care is required when addressing summary judgment motions in takings cases, due to their fact-intensive nature. *Yuba Goldfields, Inc. v. United States,* 723 F.2d 884, 887 (Fed.Cir.1983). However, this characteristic does not affect the availability of summary judgment when appropriate to the circumstances. *Avenal v. United States,* 100 F.3d 933, 936 (Fed.Cir.1996). In deciding whether this case is ripe for summary adjudication, the Court must determine whether the parties' many factual disputes are material to the resolution of the case. *See Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. 2505.

### Discussion

#### A. *Plaintiff's Claim Is Not Time–Barred.*

██ To support its assertion of subject matter jurisdiction, IIP must demonstrate by a preponderance of the evidence that its claims are not time-barred by this Court's six-year statute of limitations. *See, e.g., John R. Sand & Gravel,* 457 F.3d at 1354. After considering the evidence submitted by the parties, the Court finds that IIP has met its burden for the purpose of deciding Defendant's motion to dismiss.

IIP relies primarily on the factual allegations in the declaration of David Wick. Mr. Wick states that he has observed a dramatic increase in Border Patrol activity on Parcel 11 since 2001. He alleges that the Border Patrol has engaged in "round-the clock occupation of the subject property," that Border Patrol agents have regularly harassed Mr. Wick and others, that they have graded and maintained roads on the property, and conducted other, similar activities that effectively declare the Border Patrol a co-tenant of the property. (Wick Decl. ¶¶ 2, 9, 11–13; Pltf.'s Response at 12).

The Court does not assume the truth of IIP's allegations in determining jurisdiction, but finds enough independent support in the record to rule in favor of Plaintiff at this stage. *See Cedars–Sinai Med. Ctr.,* 11 F.3d at 1584. For example, the Border Patrol has acknowledged that, in the wake of the September 11, 2001 terrorist attacks, its mission expanded to include prevention of terrorist entry into the United States. (Deft.'s Exh. 20). This strategic change likely explains and corroborates Mr. Wick's observations of increased Border Patrol presence on IIP's property since 2001. Further, Border Patrol Agent Joe Perez stated in his deposition that he and other agents enter the property "on a daily basis 24 hours a day." (Perez Dep. at 14, Feb. 21, 2007). Aerial photographs of the area near Parcel 11 support IIP's allegations that the Border Patrol has graded or maintained roads on or near the property within the last six years. In a 2006 photograph, a road cutting across the subject property is clearly visible. In a photograph of the same area, taken in 1998, the road is nowhere to be seen.[2] (Deft.'s Exhs. 5D, 5F; Wick Decl. ¶ 11; Oral Arg. Tr. at 45–46).

---

**2.** The Court recognizes that the road in question could have been created between 1998–2000,

Here, the jurisdictional question is linked to the merits of the case, and consequently, to the many factual disputes presented by the parties. The Court finds that IIP has offered adequate factual support to show, by a preponderance of the evidence, that the Court may properly exercise its jurisdiction. *Reynolds,* 846 F.2d at 748. Such a showing is all that is required at this stage. *See Hansen,* 65 Fed.Cl. at 94 (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683) (finding that when deciding a motion to dismiss, the Court need not determine whether plaintiff will ultimately prevail). Therefore, the Court rules that it has the requisite subject matter jurisdiction in this case. If, going forward, the facts and circumstances relating to the accrual of the cause of action demonstrate that Plaintiff's claims are time-barred by the six-year statute of limitations, the Court may dismiss for lack of subject matter jurisdiction at that time. *See* RCFC 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *see also Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (stating that lack of subject matter jurisdiction may be raised "at any stage in the litigation, even after trial and the entry of judgment"); *Kontrick v. Ryan,* 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (same); *Medina Const., Ltd. v. United States,* 43 Fed.Cl. 537, 556 (1999).

**B.** *IIP Has Stated a Claim Upon Which Relief Can Be Granted.*

▮ Defendant asserts that when Plaintiff acquired Parcel 11 in 1983, it did so subject to the existence of the Border Patrol's right to access the property to patrol for illegal aliens. Deft.'s Reply at 12. Consequently, Defendant argues, Plaintiff lacks the right to exclude the Border Patrol from Parcel 11, and thus has not stated a claim upon which relief may be granted. Deft's. Motion at 2. While the Government indisputably has some right of access to Plaintiff's property, under

the Immigration and Nationality Act of 1952 and a general law enforcement power to pursue suspects of illegal activity even onto private land, its right of entry is not without limitation. 8 U.S.C. § 1357(a)(3); *see also United States v. Romero–Bustamente,* 337 F.3d 1104, 1109 (9th Cir.2003) (holding right of entry does not extend to the backyard or curtilage of the home, and stating "we seriously doubt that Congress intended to give the Border Patrol such unique and sweeping power."). The relationship and interaction between the Defendant's rights and the Plaintiff's rights are fact-intensive issues, to be resolved at trial.

In the alternative, Defendant argues that the Border Patrol's exercise of police power in this case does not give rise to a right for compensation under the Fifth Amendment. Deft.'s Reply at 12. Defendant instead argues that the Border Patrol's activities fall into a category of government intrusions which are traditionally considered to be a non-compensable exercise of the government's police power. *Id.* Defendant notes that "few functions are more intrinsic to the purpose and function of a government than the enforcement of its criminal laws," especially where the conduct at issue involves protection of our international borders. Deft.'s Reply at 12.

The Court readily agrees that the work of the Border Patrol is both important and appreciated. However, the legality of an exercise of police power does not necessarily preclude a taking claim. *See, e.g., Palazzolo v. Rhode Island,* 533 U.S. 606, 636, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (O'Connor, J., concurring) ("The first question is whether the enactment or application of a regulation constitutes a valid exercise of police power. The second question is whether the State must compensate a property owner for a diminution in value effected by the State's exercise of its police power."). Since neither of Defendant's arguments is an absolute bar to Plaintiff's claims, Defendant's 12(b)(6) motion to dismiss must be denied.

therefore falling outside the six-year statute of limitations. However, since Defendant argues that all of the roads currently on the property have been there since at least 1998, (Oral Arg.

Tr. at 17, 45), this photographic evidence to the contrary tends to support IIP's version of the facts.

## C. *Genuine Issues of Material Fact Exist.*

■ With its motion for summary judgment, Defendant submitted 33 paragraphs of Proposed Findings of Uncontroverted Fact. Plaintiff responded to Defendant's submission, disagreeing with at least 26 of the Government's 33 proposed findings. Despite the many areas of contention, Defendant nevertheless argues that there are no material facts in dispute that would prevent the Court from granting summary judgment in its favor.

Contrary to Defendant's assertion, the record reflects the parties' disagreement on key fact issues that preclude the Court from granting the Government's motion for summary judgment. Examples of such disputes include whether: (1) the Border Patrol's presence on Parcel 11 has increased since December 2000, six years prior to the filing of this claim; (2) the nature of the Border Patrol's activities on Parcel 11 has changed since December 2000; (3) the Border Patrol has created or improved roads on Parcel 11 since December 2000; (4) Border Patrol agents have questioned or harassed Mr. Wick and other legal entrants on Parcel 11 since December 2000; (5) the Border Patrol has cut or threatened to cut locks to a gate on Parcel 11 since December 2000; and (6) the Border Patrol agents have damaged improvements and landscaping on Parcel 11 since December 2000.

Given the parties' disagreement on a wide range of material facts, the determination of whether a taking occurred in this case necessarily will depend on a fact-intensive inquiry as to the extent, frequency, and nature of the Border Patrol's activities. *See Althaus v. United States,* 7 Cl.Ct. 688, 693 (1985) ("[W]here a taking claim is based on progressive accumulation of events and governmental actions ... whether a constitutional taking has occurred requires ad hoc determination of the peculiar facts of the case.").

IIP's allegations, accepted as true for purposes of a summary judgment motion, rise to a level beyond the "normal, non-appropriative governmental functions" Defendant describes. (Oral Arg. Tr. at 20). Though entering onto IIP's property to apprehend a fleeing illegal alien may not necessarily rise to the level of a taking, using IIP's property as an apprehension base might qualify as such. *See, e.g., Tuthill Ranch, Inc. v. United States,* 381 F.3d 1132 (Fed.Cir.2004) ("When the Government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner, regardless of whether the interest taken constitutes an entire parcel or merely a part thereof."). The creation of roads, the damage to property, or the harassment of people lawfully conducting their business also is relevant to the taking analysis in the present case. *See, e.g., John R. Sand & Gravel,* 457 F.3d at 1356 (finding government construction of a fence on plaintiff's property constituted accrual date of taking claim). Since nearly all the circumstances of the Border Patrol's activities are vigorously contested by the parties and their resolution is necessary for proper adjudication, the Court finds that this case cannot be disposed of through preliminary motions.

In its motion for summary judgment, the Government decries IIP's factual allegations as "inaccurate." Deft.'s Motion at 2. Notably, the Government contradicts itself in arguing that no genuine issues of material fact exist, while simultaneously asserting that IIP's version of the facts is wrong. It is true that this scenario would not prohibit summary judgment where the dispute centered on facts not material to the resolution of the case. *Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. 2505. Here, however, the contested facts are essential to the adjudication of Plaintiff's claims. The Government is not entitled to judgment as a matter of law because, if IIP's allegations are true, the Border Patrol's actions on the subject property may constitute a compensable taking under the Fifth Amendment. Therefore, the Government's motion for summary judgment must be denied.

### Conclusion

For the reasons stated above, Defendant's motion to dismiss, or in the alternative for summary judgment, is DENIED. The Court will set a conference with counsel for

the parties to establish a schedule for further proceedings and trial.

IT IS SO ORDERED.