**M. Robert ULLMAN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 04–1275–T.**

United States Court of Federal Claims.

March 25, 2005.

**558**

M. Robert Ullman, Reading, PA, pro se.

Robert J. Higgins, with whom were Eileen J. O'Connor, Assistant Attorney General, and Mildred L. Seidman, Chief, Court of Federal Claims Section, Tax Division, U.S. Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HEWITT, Judge.

Before the court are plaintiff's Two–Count Complaint (Compl.), plaintiff's Motion for Summary Judgment (Pl.'s Mot. or plaintiff's motion), defendant's Motion to Dismiss (Def.'s Mot. or defendant's motion), and the responsive briefing on the parties' respective motions.[1] Plaintiff moves for a summary judgment that "the Internal Revenue Service and the U.S. Department of Justice failed to provide, despite repeated requests, the Advice of Chief Counsel," in contravention of 26 U.S.C. § 6110(j) (2000), and that defendant "intentionally and willfully failed to act in accordance with 26 U.S.C. [§ ]6110," which governs public inspections of written determinations of the IRS. Pl.'s Mot. at 1. Defendant moves to dismiss plaintiff's complaint for "lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted." Def.'s Mot. at 1 (citing Rules of the Court of Federal Claims (RCFC) 12(b)(1), 12(b)(2), and 12(b)(6)). Because subject matter jurisdiction is a "threshold matter" that must be

---

1. The responsive briefing to plaintiff's motion includes plaintiff's Proposed Findings of [U]ndisputed Fact[] to Support [Plaintiff's] Motion for Summary Judgment (Pl.'s Facts); defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment (Def.'s Opp'n or defendant's opposition); and defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact (Def.'s Resp. or defendant's response). Plaintiff did not file a reply to defendant's opposition; accordingly, the court deems waived plaintiff's right to file a reply. The responsive briefing to defendant's motion includes plaintiff's Opposition to U.S. Motion to Dismiss (Pl.'s Opp'n or plaintiff's opposition) and defendant's Reply in Support of [its] Motion to Dismiss (Def.'s Reply or defendant's reply).

To assist its resolution of the pending motions, the court ordered the parties to file supplemental briefs addressing the applicability of 26 U.S.C. §§ 6110(i)(4)(B) and (j) to plaintiff's claim and, specifically, to address whether plaintiff qualifies a "recipient" of Chief Counsel advice under subsection (j). *See generally* Order of Feb. 25, 2005. In compliance with the court's order, defendant filed its Memorandum in Response to the Court's February 25, 2005 Order (Def.'s Supp.), and plaintiff filed its Response to Court Order Filed February 25, 2005 (Pl.'s Supp.).

addressed before the court reaches the merits of plaintiff's claim, the court considers defendant's motion under RCFC 12(b)(1) first. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *see also Nippon Steel Corp. v. United States,* 219 F.3d 1348, 1352 (Fed.Cir.2000) (quoting *Steel Co.,* 523 U.S. at 94–95, 118 S.Ct. 1003).

For the following reasons, defendant's motion to dismiss is GRANTED and plaintiff's motion for summary judgment is rendered MOOT.

## I. Background

### A. Plaintiff's Installment Agreement with the IRS

On February 4, 1991, the Internal Revenue Service (the IRS) issued an assessment for $80,430.47 against plaintiff as the responsible party with respect to the unpaid employee withholding taxes of plaintiff's business, Canoe Manufacturing Co. (Canoe), for the first and second quarters of 1989. Complaint (Compl.) at 4, ¶ 10; *id.* at 6, ¶ 23; Exhibits to the Complaint (Compl.App.) at 3 (3/6/99 Notice of Federal Tax Lien) (executing "a lien in favor of the United States" for an unpaid tax liability of $80,430.47 that was assessed against plaintiff on Feb. 4, 1991, but never paid); *see generally* 26 U.S.C. § 6672 (2000).

The IRS subsequently determined that plaintiff was not the responsible party with respect to the unpaid taxes for the second quarter of 1989 and abated $34,778.96 of the assessment,[2] reducing plaintiff's tax liability to $45,651.51. Compl. at 6–7, ¶ 24; Compl. App. at 5 (9/12/00 Notice of Federal Tax Lien Refiling). Because plaintiff was unable to pay this lump sum, he negotiated and entered into a written installment agreement with the IRS on January 25, 1995. Compl. at 8–10 ¶¶ 36–39. The agreement provided that plaintiff was to make monthly payments of $600 until his underlying tax liability was satisfied.[3] *Id.;* Compl. App. at 27–28 (plaintiff's 1/25/95 IRS Form 433–D (installment agreement)).

At the time plaintiff was negotiating the terms of his installment agreement, he had been notified by the Pension Benefit Guaranty Corporation (PBGC) that a "substantial reduction"[4] in his monthly pension payments could be forthcoming. Compl. at 7, ¶ 29.[5] Plaintiff's monthly pension comprised fifty-percent of his gross income. *Id.* at 8, ¶ 31. At the time he signed the installment agreement, plaintiff told an IRS agent that he would "know about the possible reduction in the P.B.G.C. pension payment ... [w]ithin two years." *Id.* at 9, ¶ 36. In response to this statement, the IRS agent inserted a provision in the installment agreement stat-

**2.** On August 22, 1987, Canoe filed a petition seeking reorganization under Chapter 11 of the Bankruptcy Code, *see generally* 11 U.S.C. §§ 1101–1174 (2000). Compl. at 5, ¶ 13. On March 9, 1989, "[p]ursuant to a motion by the IRS," Canoe's Chapter 11 bankruptcy was converted to a Chapter 7 liquidation, *see generally* 11 U.S.C. §§ 701–784 (2000), and a United States trustee was appointed to oversee the liquidation of the company. Compl. at 5, ¶ 14. Because Canoe was operated by a United States Trustee between March and June 1989, the IRS ultimately found plaintiff not responsible for Canoe's unpaid employment taxes during this period and reduced plaintiff's liability accordingly. *Id.* at 6–7, ¶ 24.

**3.** "The installment agreement also covered an assessment made against [plaintiff] ... for the last two quarters of 1998, with a balance due of $952,011." *United States v. Ullman,* 55 Fed. Appx. 105, 106 (3d Cir.2003) (*Ullman IV*), cert denied, 540 U.S. 950, 124 S.Ct. 419, 540 U.S. 950 (2003), *and pet. for reh'g denied,* 541 U.S. 957, 124 S.Ct. 1707, 541 U.S. 957 (2004) (appended

to Compl. App. at 180–87). This assessment is not at issue in the present litigation.

**4.** For consistency and convenience, the court has altered (usually from upper case to lower case) the capitalizations of individual letters and certain words quoted from plaintiff's filings.

**5.** After Canoe filed for Chapter 11 bankruptcy, PBGC was appointed as the trustee for Canoe's Defined Benefit Pension Plan, Compl. at 7, ¶ 26, and "[a]ll plan assets [were] transferred to the PBGC." Compl. App. at 7 (8/12/91 letter from Donna L. Kaufman, Assistant Vice President, Meridian Asset Mgmt., Inc., to plaintiff). Plaintiff filed for early retirement benefits under the plan, and the PBGC made an initial determination that plaintiff was to receive $1,016.04 per month. Compl. at 7, ¶¶ 27–29. However, PBGC subsequently explained to plaintiff that, under ERISA, the "substantial owner" of a business, *see* 29 U.S.C. § 1322(b)(5)(A) (2000), such as plaintiff, "would experience a substantial reduction in the monthly payment and would have to repay any overpayments." Compl. at 7, ¶ 29.

ing that the "[a]greement would be reevaluated on or about 1–26–97." Compl. App. at 28 (installment agreement).

When the installment agreement was negotiated and signed, plaintiff questioned the IRS agent about the effect that a reduction in his pension would have on the terms of his installment agreement. Compl. at 8–9, ¶ 36. Plaintiff claims that a contemporaneous oral agreement was entered into to address these concerns. *Id.* The alleged oral agreement provided that, "if the P.B.G.C. reduced [plaintiff's] monthly [pension] payment[,] the IRS would allow an equal reduction in the $600.00 per month [installment] payment." *Id.* at 9, ¶ 36; *see also id.* (quoting the installment agreement: " '[T]his agreement is based upon your current financial circumstances.' "); Compl. App. at 56 (4/3/00 letter from plaintiff to Steve Bucci, IRS Collection Division) ("When I signed the agreement on 1/25/95 Agent Eugene Clarke told me (very clearly) 'if your pension is reduced, we will reduce your monthly payments by a like amount.' ").

### B. Plaintiff's Requests for Chief Counsel advice

Plaintiff "dutifully paid the $600.00 per month, beginning January 25, 1995, but continued to protest the assessment" for four reasons unrelated to the possible reduction in his monthly pension. Compl. at 10, ¶ 41. As part of this protest, plaintiff contacted the U.S. Senate Finance Committee for assistance. *Id.* at 10, ¶ 42. Senator William V. Roth, Jr., the committee chairman, referred plaintiff to the IRS Taxpayer Advocate in Pittsburgh. Compl. App. at 33 (10/16/98 letter from Sen. Roth to plaintiff) (offering "to forward [plaintiff's] letter to this task force"); *id.* at 34 (3/28/99 letter from Louis Romito, Taxpayer Advocate, IRS) ("Your letter dated October 1, 1998, initiated the inquiry by the Senate Finance Committee (SFC).

The primary concern you expressed in that letter, and the foremost point repeated in your subsequent correspondence, is the alleged failure of the Internal Revenue Service [t]o honor the terms of your Installment Agreement. This letter addresses that concern.").

In 1998 and 1999, plaintiff sent numerous letters to the Taxpayer Advocate and other IRS offices requesting opinions from the IRS Chief Counsel concerning whether the circumstances unrelated to his pension gave him a "right to a reduction in the payments made under [his] installment agreement." *Id.* at 36 (6/8/98 letter from Kathryn A. Zuba, Chief, Branch 2 (General Litigation), IRS, to plaintiff) (Zuba Letter); *see also* Compl. at 10–11, ¶¶ 41, 43; Compl. App. at 39 (12/2/99 letter from plaintiff to Louis Romito, Taxpayer Advocate, IRS) ("I[ ] am requesting that the Internal Revenue Service provide me with a written legal opinion for the following three disputes."). During this period, plaintiff received several letters from the IRS, which, according to plaintiff, demonstrate that "Chief Counsel advice," as defined in 26 U.S.C. § 6110 [6], was issued concerning his claim. For example, in a letter dated June 8, 1998, an attorney from the IRS Office of Chief Counsel wrote:

> It is not the practice of the Chief Counsel to meet with taxpayers who write letters to him about legal issues that arise in their cases. Also, I understand that you have been provided the opportunity to meet with Counsel personnel . . . to discuss your concerns about your installment agreement. *Please be assured, however, that the Chief Counsel has directed that your case be thoroughly researched and the legal arguments you make concerning your right to a reduction in the payments made under your installment agreement be carefully considered.* You can expect a re-

---

**6.** Section 6110(i)(1)(A) defines "Chief Counsel advice" as

> written advice or instruction, under whatever name or designation, prepared by any national office component of the Office of Chief Counsel which (i) is issued to field or service center employees of the Service or regional or district employees of the Office of Chief Counsel; and (ii) conveys (I) any legal interpretation of a

revenue provision; (II) any Internal Revenue Service or Office of Chief Counsel position or policy concerning a revenue provision; or (III) any legal interpretation of State law, foreign law, or other Federal law relating to the assessment or collection of any liability under a revenue provision.

26 U.S.C. § 6110(i)(1)(A).

sponse to your letter in about a month, and the response will provide you with the name of someone in Chief Counsel with whom you can speak further if you are not satisfied with that response.

Compl.App. at 36 (Zuba Letter) (emphasis added). Plaintiff emphasizes that his requests for Chief Counsel advice "did not include the specifics of the [installment] agreement ... as the P.B.G.C. had not yet made their decision regarding a possible reduction" in his monthly pension Compl. at 11, ¶ 43.

### C. Plaintiff Unilaterally Reduces His Installment Payments

Effective May, 2000, the PBGC reduced plaintiff's monthly pension by $347.60. *Id.* at 11, ¶ 45; Compl. App. at 55 (3/10/00 letter from PBGC to plaintiff). Relying on his alleged oral agreement with the IRS agent, plaintiff contacted the IRS Collection Division to request a commensurate reduction in his monthly installment payment. *See* Compl. at 11, ¶ 45; Compl. App. at 56, 58–59 (4/3/00, 4/13/00, and 4/17/00 letters from plaintiff to Steve Bucci, IRS Collection Division); *id.* at 60–62 (5/25/00 letter from plaintiff to IRS Agent Eugene Clarke). According to plaintiff, the IRS did not answer his letters, Compl. at 11–12, ¶¶ 46–47, whereupon plaintiff "unilaterally reduced his [monthly installment] payment[s] from $600 to $225.40. He continued these [partial] payments until January, 2001." Compl. at 12, ¶ 48.

### D. Prior Litigation Between the Parties

#### 1. Litigation in the United States District Court for the Eastern District of Pennsylvania

Because plaintiff failed to make full monthly payments in accordance with his installment agreement, the IRS terminated the agreement. *See* 26 U.S.C. § 6159(b)(4)(A) (2004) (authorizing termination of an installment agreement when a taxpayer fails to pay any installment at the time such installment payment is due). On January 18, 2001, defendant "instituted a proceeding against [plaintiff,] filing a one-count complaint [in the United States District Court for the Eastern District of Pennsylvania] to reduce [the] tax

assessment ($112,010) to judgment (includ[ing] [penalties and] interest of $66,359)." Compl. at 12, ¶ 51. Plaintiff "counterclaim[ed] for damages for wrongful tax collection pursuant to 26 U.S.C. § 7433, claiming that the IRS violated the installment agreement and failed to provide certain advice of the Chief Counsel under 26 U.S.C. § 6110(i)(4)(B)." *United States v. Ullman,* 55 Fed.Appx. 105, 106 (3d Cir.2003) (*Ullman IV*), *cert. denied,* 540 U.S. 950, 124 S.Ct. 419, 540 U.S. 950 (2003), *and pet. for reh'g denied,* 541 U.S. 957, 124 S.Ct. 1707, 541 U.S. 957 (2004) (appended to Compl. App. at 180–87). The parties filed cross-motions for summary judgment. While these motions were pending, plaintiff also filed a motion to compel the production of certain IRS documents, including "Opinion[s] of Counsel" that were prepared by the IRS Office of Chief Counsel and addressed both plaintiff's case and cases similar to plaintiff's. *See* Compl. App. at 72–73 (Motion to Compel dated 6/5/01).

In an unreported decision, the district court first addressed defendant's motion for summary judgment on plaintiff's tax liability. Noting that " '[a]ssessments ... establish a *prima facie* case of liability against a taxpayer,' " the district court emphasized that "a taxpayer in a collection action has the burden of showing the assessment is incorrect." *United States v. Ullman,* No. 01–0272, 2001 WL 1346348, at *2 (E.D.Pa. Oct.30, 2001) (*Ullman I*) (quoting *Freck v. IRS,* 37 F.3d 986, 992 n. 8 (3d Cir.1994), and citing *United States v. Janis,* 428 U.S. 433, 440–42, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976)). Plaintiff advanced numerous theories to satisfy this burden, including the theory that "the IRS ... refused to supply requested, written advice of the Chief Counsel." *Id.*

The district court determined that most of plaintiff's arguments "could [not] possibly refute the validity of the actual assessment of tax liability." *Id.* at *3. With respect to arguments based on the alleged failure of the IRS to produce written advice of the Chief Counsel, the court stated:

> Ullman's arguments pertaining to[,] [*inter alia,*] the ... failure to provide written advice of the Chief Counsel ... have no bearing on the validity of the IRS'[ ] as-

sessment, as these claims only relate to the IRS' attempts to collect Ullman's tax debt subsequent to its actual assessment. However,these tangential claims will be addressed, *infra,* as they relate to [Ullman's] counterclaims.

*Id.* Finding that plaintiff did not meet his burden of showing that the amount of the assessment was incorrect, the district court granted summary judgment in favor of defendant on plaintiff's underlying tax liability of $112,010.95 and denied plaintiff's motion for summary judgment. *Id.* at *5.

The district court also considered and dismissed plaintiff's counterclaims. First, the court found that plaintiff's claim for wrongful tax collection was time-barred. *Id.* at *4–*5. The court then declined to address plaintiff's claim "that the IRS violated 26 U.S.C. § 6110(i)(4)(B) when it failed to honor [plaintiff's] repeated requests to obtain the Chief Counsel's written advice and other background documents pertaining to his particular dispute." *Id.* at *5. The court stated:

Although Section 6110 permits a taxpayer to bring a civil action whenever the IRS fails to follow the procedures set forth in subsection (i)(4)(B), a taxpayer's exclusive remedy is a civil action against the Secretary in the United States Court of Federal Claims. Therefore, this Court does not have jurisdiction to hear Ullman's Section 6110 claim.

*Ullman I,* 2001 WL 1346348, at *5 (citing 26 U.S.C.A. § 6110(j)(1) (1989 & Supp.2001)). After granting summary judgment in favor of defendant, the district court denied plaintiff's motion to compel as moot. *See id.* at 62 (10/31/01 docket entry in *United States v. Ullman,* No. 01–0272 (E.D.Pa.)).

Plaintiff timely filed a motion for reconsideration, arguing "that he was entitled to submit the reduced monthly payments to the IRS pursuant to an oral agreement entered into between himself and IRS Agent Eugene Clarke." *United States v. Ullman,* No. 01–0272, 2002 WL 373350, at *1 (E.D.Pa. Jan.29, 2002) (*Ullman II* ). Plaintiff claimed that he relied on this alleged oral agreement when he reduced his monthly installments following the reduction in his pension. *Id.* Although the district court declined to disturb

its previous ruling with respect to plaintiff's underlying tax liability, it determined that plaintiff "appear[ed] to have stated a cognizable [cognizable] claim" for wrongful collection activities under Section 7433. *Id.* at *2. The court stated:

If the oral terms ... became part of the installment agreement and entitled [plaintiff] to reduce his monthly installment payments to the IRS once his pension payments were similarly reduced, it does not appear that the IRS had any authority to terminate [the] installment agreement. The Court assumes that without such authority, the IRS' act of unjustifiably terminating a valid installment agreement would be ... in violation of 26 U.S.C. § 7433.

*Id.* at *1. Accordingly, the district court reinstated plaintiff's Section 7433 counterclaim and scheduled a trial on this claim. *Id.* at *2 ("All discovery in this case is to be completed by March 31, 2002. All case dispositive motions are due by April 12, 2002. Trial is set for May 13, 2002.").

Within three weeks, the parties again cross-moved for summary judgment with respect to the reinstated Section 7433 counterclaim. *See* Compl. App. at 67 (2/14/02 docket entry for defendant's motion for summary judgment in *Ullman,* No. 01–0272 (E.D.Pa.)); *id.* (2/27/02 docket entry for plaintiff's motion for summary judgment in *Ullman,* No. 01–0272 (E.D.Pa.)). The district court first determined that the alleged oral agreement could not be construed as a modification of the underlying installment agreement because "an installment agreements operates pursuant to statute" and the Internal Revenue Code does not authorize oral installment agreements. *United States v. Ullman,* No. 01–0272, 2002 WL 987998 at *4 (E.D.Pa. May 8, 2002) (*Ullman III* ); *see also id.* ("[Under 26 U.S.C. § 6159,] [t]he IRS is authorized to enter into a written agreement allowing payment of taxes on an installment basis .... [O]ral agreements are not contemplated by the statute. Accordingly, oral agreements would not be incorporated into the terms of a written installment agreement."). The district court then concluded that the alleged oral agreement could not independently be construed as a binding contract because

there was an "absence of consideration on the part of [plaintiff]." *Id.* Finding that "the IRS acted properly and pursuant to statute in terminating the installment agreement when [plaintiff] failed to make the full $600.00 payment as provided under its terms," *id.*, the district court granted defendant's motion, denied plaintiff's motion, and dismissed plaintiff's case, *id.* at *6.

Plaintiff timely filed a motion for reconsideration, and also filed two motions to compel the production of "Advice of Chief Counsel." Compl. App. at 127, 153 (motions to compel dated 5/8/02 and 5/31/02 in *Ullman,* No. 01–0272 (E.D.Pa.)). The court denied plaintiff's motion for reconsideration. *Id.* at 155–56 (order entered 6/13/02 in *Ullman,* No. 01–0272 (E.D.Pa.)). The court also denied plaintiff's motions to compel as barred by the doctrine of *res judicata:*

> The allegations and arguments in [plaintiff's] numerous filings associated with the above motions [to compel] duplicate those facts and arguments raised by [plaintiff] and addressed by the Court in its Memoranda and Orders dated October 30, 2001, ruling on the United States' ... motion for Summary Judgment and May 8, 2002, ruling on the United States' motion for Summary Judgment. Accordingly, [plaintiff's] motions are denied.

*Id.* at 156.

    2. Litigation in the United States Court of Appeals for the Third Circuit and the Supreme Court of the United States

Plaintiff timely appealed the district court's denial of plaintiff's motion for reconsideration and motions to compel the production of Chief Counsel Advice. *Id.* at 160 (Notice of Appeal filed 6/27/02) ("M. Robert Ullman also appeals the final order of 6/13/02 which denied the Motion ... [ ]to compel the Internal Revenue Service/U.S. Department of Justice to provide all requested documents, including 'Opinions of Chief Counsel' pursuant to 26 U[.]S[.]C[.][§ ] 6110(i)(4)(B)."); *id.* ("M. Robert Ullman also appeals the order of 6/13/02 which denied the Ullman Motion for Sanctions ... for refusing to comply with the [Motion to Compel] the

'Opinion of Chief Counsel' [pursuant to] 26 U.S.C. [§ ] 6110"); *see also id.* at 164 (docket entry dated 6/27/02 of plaintiff's notice of appeal). In an unpublished opinion, the United States Court of Appeals for the Third Circuit affirmed the district court's summary judgments in favor of defendant on both plaintiff's tax liability and plaintiff's wrongful collection counterclaim. *Ullman IV,* No. 02–2752, slip op. at 1–2. The Third Circuit also affirmed the district court's denial of reconsideration. *Id.* at 2. Plaintiff's petition for an *en banc* rehearing of his case was denied, Compl. App. at 188 (denial of petition dated 4/14/03), as were plaintiff's petition for *certiorari,* 540 U.S. 950, 124 S.Ct. 419, 540 U.S. 950 (2003) (denial of *certiorari* ), and petition for rehearing, 541 U.S. 957, 124 S.Ct. 1707, 541 U.S. 957 (2004) (denial of petition for rehearing).

    E.  Plaintiff's Complaint in the United States Court of Federal Claims

On August 10, 2004, plaintiff filed a two-count complaint in the United States Court of Federal Claims. The first count alleges that defendant "[f]ail[ed] to provide, upon request, 'Advice of Chief Counsel.' " *Id.* at 1; *see generally* 26 U.S.C. § 6110(i)(4)(B), (j). Plaintiff argues that "[t]he Opinion of Chief Counsel ... was vital to the Ullman defense" in the previous litigation, *see generally* Part I.B, and Part I.D, *supra,* and seeks as damages "$112,010.95[,] ... the [amount of the] July, 2004 judgment." Compl. at 21. The second count accuses various government employees of "Fraudulent Concealment/Obstruction of Justice." Compl. at 15. Plaintiff seeks "[d]amages in excess of $15 million [for] pain and suffering to be assessed against the individual participants/parties for individual failure to follow the law." Compl. at 21.

  II.  Discussion

    A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

    1.  Standard of Review

Rule 12(b)(1) of the Rules of the United States Court of Federal Claims governs dismissal of a claim for lack of subject matter

jurisdiction. RCFC 12(b)(1). In ruling on a Rule 12(b)(1) motion to dismiss, the court is generally "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). However, plaintiff, as the non-moving party, bears the burden of establishing jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction was put in question it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

### 2. Jurisdiction of the United States Court of Federal Claims

The United States Court of Federal Claims is a court of "limited jurisdiction." *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). The Tucker Act, 28 U.S.C. § 1491 (2000), confers upon this court jurisdiction over certain claims against the United States; however, the Tucker Act does not create a substantive right enforceable against the sovereign. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Khan v. United States,* 201 F.3d 1375, 1377 (Fed.Cir.2000). Rather, a plaintiff's claim must be grounded in a contract or arise pursuant to a money-mandating statute, regulation, or provision of the Constitution, such as the Takings Clause of the Fifth Amendment. *See* 28 U.S.C. § 1491; *Testan,* 424 U.S. at 397, 96 S.Ct. 948.

The general rule is that this court has jurisdiction over a case if a claimant makes a non-frivolous allegation that he is "entitled to money from the United States because a statute or regulation grants him that right," or because a contract or constitutional provision creates an equivalent right. *Ralston Steel Corp. v. United States,* 169 Ct.Cl. 119, 340 F.2d 663, 667 (Ct.Cl.1965); *see also Stephenson v. United States,* 58 Fed.Cl. 186, 192 (2003) ("[W]e are not empowered by Congress to recognize '*every* claim [against the United States] involving or invoking the Constitution, a federal statute, or a regulation.'"

Rather, [we] may only hear claims seeking primarily *monetary relief* against the United States government based upon 'money-mandating' provisions of the Constitution, acts of Congress, or executive regulations, to which the plaintiff alleges a specific entitlement." (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (Ct.Cl.1967) (footnote and citations omitted), *overruled on other grounds by Malone v. United States,* 849 F.2d 1441, 1444–45 (Fed. Cir.1998), *overruling recognized by Claude E. Atkins Enters. v. United States,* 15 Cl.Ct. 644, 647 (1988))). As the United States Court of Appeals for the Federal Circuit recently noted:

> When a complaint is filed alleging a Tucker Act claim ... the trial court at the outset shall determine ... whether the Constitutional provision, statute, or regulation is one that is money-mandating.
>
> If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course. For purposes of the case before the trial court, the determination that the source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action.

*Fisher v. United States,* 402 F.3d 1167, 1173, 2005 WL 545195, at *4–*5 (Fed.Cir.2005).

The United States Court of Federal Claims "may not entertain claims outside this specific jurisdictional authority." *Adams v. United States,* 20 Cl.Ct. 132, 135 (1990); *see also Taylor v. United States,* 49 Fed.Cl. 598, 601 (2001) ("If there is no jurisdiction, this court must dismiss the action."). For example, this court may not assert original or pendent jurisdiction over claims alleging tortious or criminal conduct. *See* 28 U.S.C. § 1491(a)(1) (providing that this court lacks jurisdiction over cases "sounding in tort"); *Keene Corp. v. United States,* 508 U.S. 200, 214, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993)

("[T]ort cases are outside the jurisdiction of the Court of Federal Claims."); *Joshua v. United States,* 17 F.3d 378, 379 (Fed.Cir. 1994) ("The court has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code . . . .").

The court recognizes that a pro se plaintiff is entitled to liberal construction of his pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) ("[A]llegations of the pro se complaint . . . [are held] to less stringent standards than formal pleadings drafted by lawyers."); *Vaizburd v. United States,* 384 F.3d 1278, 1285 n. 8 (Fed.Cir.2004) (noting that pleadings drafted by pro se parties "should . . . not be held to the same standard as [pleadings drafted by] parties represented by counsel") (citation omitted). However, "[t]his latitude . . . does not relieve a *pro se* plaintiff from meeting jurisdictional requirements." *Bernard v. United States,* 59 Fed.Cl. 497, 499 (2004), *aff'd* 98 Fed.Appx. 860, 2004 WL 842679 (Fed.Cir. Apr.9, 2004); *see also Kelley v. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir. 1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only.").

The court addresses each of plaintiff's claims in turn.

3. The Court Has Jurisdiction Over Plaintiff's Claim Alleging the Denial of Chief Counsel Advice

■ Count one of plaintiff's complaint alleges that defendant failed to provide taxpayer-specific Chief Counsel advice, 26 U.S.C. § 6110(i)(4)(B), in contravention of Section 6110(j). *See generally* Compl. at 12–15, ¶¶ 51–70. Plaintiff argues that "the United States has argued and the courts have ruled that the District Court and the U.S. Courts of Appeals do not have jurisdiction to hear Ullman's Section[ ]6110 Claim" because the "exclusive civil remedy . . . [lies] in the Unit-

ed States Court of Federal Claims." *Id.* at 4, ¶ 9.

Section 6110(i)(4)(B) of Title 26 of the United States Code sets out procedures that the Office of Chief Counsel must follow when releasing taxpayer-specific Chief Counsel advice for public inspection.

> In the case of Chief Counsel advice which is written with respect to a specific taxpayer or group of specific taxpayers, the Secretary shall, within 60 days after the issuance of the Chief Counsel advice, mail . . . notice . . . to each such taxpayer. The notice shall include a copy of the Chief Counsel advice on which is indicated the information that the Secretary proposes to delete pursuant to subsection (c)(1).[7] The Secretary . . . shall delete the names, addresses, and other identifying details of taxpayers other than the person to whom the advice pertains, except that the Secretary shall not delete from the copy of the Chief Counsel advice that is furnished to the taxpayer any information of which that taxpayer was the source.

26 U.S.C. § 6110(i)(4)(B).

Section 6110(j)(1)(B) provides a civil remedy for "recipient[s]" of Chief Counsel Advice if the Secretary fails to follow the procedures set forth in Section 6110(i)(4)(B):

> Whenever the Secretary . . . fails to follow the procedures in subsection . . . (i)(4)(B), the recipient of the written determination or any person identified in the written determination shall have as an *exclusive civil remedy an action against the Secretary in the United States Court of Federal Claims which shall have jurisdiction to hear any action under this paragraph.*

26 U.S.C. § 6110(j)(1)(B) (emphasis added). Subsection (2) of Section 6110(j) provides that

> in any suit brought under subparagraph (1)(B) in which the Court determines that an employee intentionally or willfully failed to act in accordance with subsection . . . (i)(4)(B), the United States shall be liable

---

7. Section 6110(c)(1) provides in relevant part that, "[b]efore making any written determination or background file document open or available to public inspection . . . the Secretary shall delete . . . the names, addresses, and other identifying details of the person to whom the written determination pertains and of any other person . . . identified in the written determination or any background file document." 26 U.S.C. § 6110(c)(1).

to the person in an amount equal to the sum of—

(A) *actual damages sustained by the person but in no case shall a person be entitled to receive less than the sum of $1,000, and*

(B) *the costs of the action together with reasonable attorney's fees as determined by the Court.*

26 U.S.C. § 6110(j)(2) (emphasis added). By its terms, the statute is money-mandating and vests the Court of Federal Claims with exclusive jurisdiction to award damages for its violation.

Defendant argues that because "the facts alleged in the complaint pertain to a discovery request and motions to compel" in plaintiff's district court litigation, this court lacks jurisdiction over plaintiff's § 6110(j) claim. Def.'s Mot. at 5. The court disagrees for several reasons. First, plaintiff's complaint states that its jurisdictional basis is "26–USC 6110." Compl. at 4, ¶ 9. Second, although the district court determined that plaintiff's invocation of § 6110 "could [not] possibly refute" his underlying tax liability, *Ullman I*, 2001 WL 1346348, at *3, the court also determined that it could not consider plaintiff's separate claim that the IRS violated § 6110(i)(4)(B) because that statute provided for an "exclusive remedy ... in the United States Court of Federal Claims." *Id.* at *5. Third, without addressing the merits of the motions, the district court denied plaintiff's first motion to compel as moot, and denied his second and third motions to compel in conjunction with its denial of reconsideration. Compl. App. at 65, 70 (10/31/01 and 6/13/02 docket entries for plaintiff's motions to compel in *Ullman*, No. 01–0272 (E.D.Pa.)). Similarly, the Third Circuit denied plaintiff's motions to compel on the same day it affirmed the district court judgment; it is not clear whether the court considered the merits of those motions or denied them as moot. *Id.* at 167 (1/28/03 docket entry in *United States v. Ullman*, No. 02–2752 (3d Cir.)).

Because plaintiff has made a non-frivolous allegation that he is entitled to relief under a money-mandating statute that vests exclusive jurisdiction with the Court of Federal Claims, this court has jurisdiction to consider

plaintiff's Section 6110(j) claim. *See Ralston Steel*, 340 F.2d at 667. Accordingly, defendant's RCFC 12(b)(1) motion to dismiss count one of plaintiff's complaint is DENIED.

4.  This Court Lacks Jurisdiction Over Plaintiff's Fraud and Obstruction of Justice Claims

■ Count two of plaintiff's complaint accuses defendant of "fraudulent concealment [and] obstruction of justice," Compl. at 15, and seeks "[d]amages in excess of $15 million [for] pain and suffering," *id.* at 21. The court lacks jurisdiction over such claims. The Tucker Act expressly provides that this court lacks subject matter jurisdiction over cases "sounding in tort." 28 U.S.C. § 1491(a)(1). Plaintiff's claim for "fraudulent concealment" is "grounded upon fraud, which is a tort, [and] the court lacks jurisdiction over those claims." *Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir.1997). Plaintiff's claim for "pain and suffering" sounds in tort and is not within the jurisdiction of this court. *See, e.g., Pratt v. United States*, 50 Fed.Cl. 469, 482 (2001) ("The court lacks jurisdiction to award plaintiff's prayer for damages for emotional distress and pain and suffering."). Finally, plaintiff's claim for obstruction of justice is criminal in nature; because "[t]he court has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code," *Joshua*, 17 F.3d at 379, it cannot consider the merits of this claim. Accordingly, defendant's motion to dismiss count two of plaintiff's complaint for lack of subject matter jurisdiction is GRANTED. *See* RCFC 12(b)(1).

B.  Motion to Dismiss for Failure to State a Claim

Because the court possesses jurisdiction to consider plaintiff's Section 6110 claim, *see* Part II.A.3, *supra*, it now turns to the question of whether plaintiff's complaint states a claim upon which relief may be granted, RCFC 12(b)(6).

1.  Standard of Review

Under Rule 12(b)(6), the court must accept as true the facts alleged in the complaint,

*Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) [8], and must construe all reasonable inferences in favor of the non-movant, *Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed.Cir.2001). A court must grant the motion "when the facts asserted by the plaintiff do not entitle him to a remedy." *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir. 2000) (citing RCFC 12(b)(4), which was redesignated as RCFC 12(b)(6) when the Rules of the Court of Federal Claims were revised in 2002). "Dismissal by this court under [Rule 12(b)(6)] constitutes an adjudication on the merits of a claim." *Crawford v. United States,* 53 Fed.Cl. 191, 192 (2002) (citation omitted), and "is proper only when a plaintiff 'can prove no set of facts in support of his claim which would entitle him to relief,'" *Leider v. United States,* 301 F.3d 1290, 1295 (Fed.Cir.2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), *cert. denied,* 538 U.S. 978, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003).

Further, "[t]o avoid dismissal for failure to state a claim upon which relief may be granted, plaintiff's claim must be both within the court's jurisdiction and justiciable." *Deshauteurs v. United States,* 39 Fed.Cl. 263, 268 (1997). Distinct from jurisdiction, justiciability requires that the court possesses the "ability to supply relief." *Murphy v. United States,* 993 F.2d 871, 872 (Fed.Cir.1993).

Where, as here, the parties have presented "matters outside the pleading" to the court, and the court has not excluded those materials, Rule 12(b)(6) specifically instructs that the "motion shall be treated as one for summary judgment and disposed of as provided in RCFC 56." RCFC 12(b); *see also Rotec Indus., Inc. v. Mitsubishi Corp.,* 215 F.3d 1246, 1250 (Fed.Cir.2000). Rule 56 provides that summary judgment is warranted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact that might affect the outcome of the litigation

is material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *Id.*

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party makes such a showing, the burden then shifts to the non-moving party to show that a genuine issue exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562–63 (Fed.Cir.1987). The movant is also entitled to summary judgment if the non-movant fails to make a showing sufficient to establish an element of its case on which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Dairyland Power Coop. v. United States,* 16 F.3d 1197, 1202 (Fed.Cir.1994). The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and presumptions run. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

### 2. Plaintiff Has Failed to Allege Facts Sufficient to State a Claim Under Section 6110(j)

■ Defendant argues that plaintiff has not alleged—and cannot allege—facts sufficient to state a claim under Sections 6110(i)(4)(B) and (j) because no Chief Counsel advice was ever issued in conjunction with plaintiff's dispute with the IRS. *See, e.g.,* Def.'s Mot. at 5; Def.'s Supp. at 4. Defendant notes that

plaintiff makes no allegation that a written determination, § 6110(b), which includes Chief Counsel advice, § 6110(i), was issued to him and subsequently released to the public without appropriate deletions. His underlying allegations are the opposite—

---

**8.** *Davis* addresses motions to dismiss brought under the correlative Federal Rule of Civil Procedure 12(b)(6).

no written determination/advice of Chief Counsel was provided him as he demanded in discovery during the district court litigation.

Def.'s Mot. at 2 (citations omitted).

Plaintiff disputes defendant's application of Section 6110 to the facts of his case and insists that a written determination was issued by the Office of Chief Counsel concerning his claim. Plaintiff appends to his complaint a letter from an attorney in the Chief Counsel's office that states, "Please be assured, however, that the Chief Counsel has directed that your case be thoroughly researched and the legal arguments you make concerning your right to a reduction in the payments made under your installment agreement be carefully considered." Compl. App. at 36 (Zuba Letter). Plaintiff quotes this letter in his motion, Pl.'s Facts at 4, and suggests that documents were generated by this research that qualify as "Chief Counsel advice." *Id.* at 5 ("What happened to this investigation?"). To clarify discrepancies between the parties' arguments on this point, the court ordered the parties to submit memoranda of law addressing "the applicability of subsections (i)(4)(B) and (j) to plaintiff's claim, in light of the broad definition of 'Chief Counsel [a]dvice,' *see* § 6110(i); H.R. Conf. Rep. No. 105–599, at 300–01 (1998), *reprinted in* 1998 U.S.C.C.A.N. 288, and specifically to address whether plaintiff qualifies [as] a 'recipient' [of a written determination by the Chief Counsel] under these provisions." 2/25/05 Order (citing and quoting the Zuba Letter).

In its memorandum, defendant argues that plaintiff does not qualify as a "recipient" under the statute for two reasons. First, defendant states that "no document produced by the Internal Revenue Service and/or received by the plaintiff with regard to his tax dispute with the IRS" meets the statutory definition of "Chief Counsel advice." Def.'s Supp. at 1 (citing § 6110(i)(4)(B)). Defendant notes that

[t]he statutory definition of "Chief Counsel advice" is quite specific. First, such a document must be prepared by a "national office component of the Office of Chief Counsel." § 6110(i)(1)(A). Once prepared by the national office of the Office of Chief Counsel, the document must be one issued to "field or service center employees of the [Internal Revenue] Service or regional or district employees of the Office of Chief Counsel." § 6110(i)(1)(A).

Def.'s Supp. at 1–2. As defendant points out, *id.* at 2, the statutory definition of "Chief Counsel advice" is limiting. Section 6110(i)(1)(A)(ii) describes the substance of Chief Counsel advice as follows:

(I) any legal interpretation of a revenue provision; (II)[any] Internal Revenue Service or Office of Chief Counsel position or policy concerning a revenue provision; or (III) any legal interpretation of State law, foreign law, or other Federal law relating to the assessment or collection of any liability under a revenue provision.

26 U.S.C. § 6110(i)(1)(A)(ii); *cf.* Def.'s Supp. at 3 ("The legislative history ... is not at variance with the statutory analysis provided above.... [A] document that qualifies as 'Chief Counsel advi[c]e is prepared by the IRS national office and sent to IRS personnel in the field.'") (citing H.R. Conf. Rep. No. 105–599, at 300–01 (1998), *reprinted in* 1998–3 C.B. 747). Noting that neither the addressee nor the content of the Zuba letter squares with the statutory definition of "Chief Counsel advice," defendant insists that the letter is nothing more than "routine correspondence." *Id.*

Defendant also argues that plaintiff himself cannot be a "recipient" of Chief Counsel advice under Section 6110. According to defendant, "The word 'recipient' is not defined in § 6110. Its dictionary definition is 'one that receives.'" *Id.* at 4–5 (citing and quoting Webster's Ninth New Collegiate Dictionary 983 (1985)).[9] Defendant appended to its

---

9. Defendant argues in the alternative that because Section 6110(i)(1)(A)(i) provides that Chief Counsel advice must be "issued to field or service center employees of the Service or regional or district employees of the Office of Chief Counsel," § 6110(i)(1)(A)(I), that "a taxpayer could

not be a 'recipient' of Chief Counsel advice." Def.'s Supp. at 5. The court notes that defendant's attempt to limit the term "recipient" to employees of the IRS is problematic in light of subsection (j), which provides for a civil remedy

supplemental brief the Declaration of William R. Korth, an attorney in the Chief Counsel's office. *See generally* Def.'s Supp. App. at 1–4 (Korth Decl.). This document states that no Chief Counsel advice concerning plaintiff was ever rendered by Mr. Korth or any other attorney involved in plaintiff's case. *Id.* ¶¶ 3–4, 6–8. Defendant argues that although "plaintiff did receive correspondence from the IRS, *i.e.*, he was a 'recipient' of IRS correspondence," Def.'s Supp at 5 (citing the Zuba Letter), plaintiff did not receive Chief Counsel advice from the IRS, *id.* at 6.

Plaintiff does not dispute defendant's argument that plaintiff never received Chief Counsel advice. Rather, plaintiff explains that "[i]t was the Taxpayer Advocate who requested the 'Opinion of Chief Counsel[.]' Robert Ullman did not initiate an opinion request directly to the Office of Chief Counsel. That request was taxpayer[-]specific as it related to the Ullman argument to the Taxpayer Advocate." Pl.'s Supp. at 3. Plaintiff assumes that the Taxpayer Advocate requested that the Office of Chief Counsel prepare taxpayer-specific Chief Counsel advice on plaintiff's behalf. *See id.* at 5 ("The Taxpayer Advocate promised [p]laintiff ... that he would get the opinion of Chief Counsel on ... five relevant issues."). Plaintiff also assumes that the Office of Chief Counsel prepared Chief Counsel advice concerning plaintiff, provided it to the Taxpayer Advocate, and withheld it from plaintiff. *See id.* at 1 (framing the pertinent inquiry as, "Was Ullman entitled to be a recipient of the Chief Counsel advice given to the Taxpayer Advocate pursuant to 'taxpayer-specific' negotiations between the IRS and Ullman?"); *cf. id.* at 5 ("If it is true that the Office of Chief Counsel never provided written advice or instruction to the Taxpayer Advocate pursuant to the[se] ... issues, the assignment of the case to a 'special task force' was a *sham.*"). Plaintiff contends that the IRS' failure to provide plaintiff a copy of this alleged document violates Section 6110(j). *Id.* at 2 ("In the case of Chief Counsel, advice which is written with respect to a specific taxpayer, the Secretary shall within 60 days

against the Secretary by "the recipient of the

of the issuance of Chief Counsel advice, mail the notice required ... to each taxpayer.") (paraphrasing 26 U.S.C. § 6110(i)(4)(B)).

The court finds that plaintiff's assumptions are not supported—and, in fact, are undermined—by the documents appended to plaintiff's own filings. These documents include numerous letters to and from IRS personnel, including several letters from plaintiff to the Taxpayer Advocate "requesting that the Internal Revenue Service provide [plaintiff] with a written legal opinion ... that ... the Internal Revenue Service would use to 'prove that its position on these three issues are substantially correct and justified in a defense of its position in a court of law'." Compl. App. at 39 (12/2/99 letter from plaintiff to Taxpayer Advocate Louis Romito); *see also* Pl.'s Opp'n Ex. 6, at 2 (7/22/99 letter from plaintiff to Taxpayer Advocate Louis Romito) ("I am requesting a *written legal opinion* from the IRS [Chief] Counsel regarding the correct date upon which the assessment should have been made and when the statute of limitation ... is effective upon these assessments."); *id.* Ex. 7, at 1 (11/8/99 letter from plaintiff to Taxpayer Advocate Louis Romito) ("There is absolutely no reason why I cannot get a written legal opinion regarding the two substantive issues."). Although the letters authored by plaintiff make clear plaintiff's desire to receive Chief Counsel advice, none of the documents appended to plaintiff's filings suggests that Chief Counsel advice concerning plaintiff was requested by the Taxpayer Advocate or prepared by the Office of Chief Counsel.

To the contrary, at least one letter from the Taxpayer Advocate to plaintiff advises plaintiff that Section 6110 "has no applicability to [plaintiff's] contention that the [IRS] is required to prepare and provide [him] with the legal opinions that would be used to support their position in a court of law." *E.g.*, Pl.'s Opp'n Ex. 2, at 2 (8/28/00 letter from Taxpayer Advocate Louis Romito to plaintiff). Another letter from the Taxpayer Advocate to plaintiff's former attorney declines to request Chief Counsel advice on plaintiff's behalf. *Id.* Ex. 8, at 2 (5/4/00 letter from Taxpayer Advocate Louis Romito to

written determination." 26 U.S.C. § 6110(j).

plaintiff's former counsel) ("The role of Chief Counsel is ... not to render legal opinions about taxpayer cases in response to requests from taxpayers. If Mr. Ullman can give me the formal citations that ... require IRS to provide the written legal opinions he wants, I will review them and, if appropriate, will present his position to Counsel."). Plaintiff also acquired through a Freedom of Information Act request a one-page document containing field notes written by the Taxpayer Advocate assigned to his case. Compl. App. at 57 (4/10/00 notes of Taxpayer Advocate Louis Romito). These notes mention neither a request for Chief Counsel advice on plaintiff's behalf nor the existence of Chief Counsel advice concerning plaintiff.

Plaintiff argues in the alternative that he is "entitled to be a recipient" of Chief Counsel advice, Pl.'s Supp. at 3, because defendant "never claimed, during the court proceedings," including plaintiff's various motions to compel, "that Ullman was not entitled to receive the opinion of Chief Counsel, nor did they question Ullman's status as a 'recipient' ... [of] the requested opinion," id. at 4. The court is not persuaded by this argument. The question of one's "entitlement" to receive Chief Counsel advice lies outside the scope of Section 6110, which provides a right of action in this court only after Chief Counsel advice has been prepared with respect to a taxpayer. Plaintiff has not pleaded any facts demonstrating or even suggesting the existence of such a document.

Plaintiff's arguments, which are directed to his failure to receive Chief Counsel advice, are inconsistent with and, indeed, defeat, any basis for recovery under 26 U.S.C. § 6110(j) in this court. To state a valid claim for relief under Section 6110(j), one must allege that the Secretary "fail[ed] to follow the procedures in subsection ... (i)(4)(B)". 26 U.S.C. § 6110(j). Before the "procedures" set forth in subsection (i)(4)(B) for redacting information from and disseminating Chief Counsel

advice can be followed, however, Chief Counsel advice must first be "written with respect to a specific taxpayer." § 6110(i)(4)(B). Plaintiff's filings and their supporting documentation make clear that he made a *request* to the Taxpayer Advocate that Chief Counsel advice be prepared concerning plaintiff's case. *See, e.g.,* Pl.'s Supp. at 5; Def.'s Supp. at 5; Compl. App. at 39 (12/2/99 letter from plaintiff to Louis Romito, Taxpayer Advocate) ("I[ ] am requesting that the Internal Revenue Service provide me with a written legal opinion for the following three disputes[.]"). Although plaintiff assumes that Chief Counsel advice concerning plaintiff was requested by the Taxpayer Advocate, provided to the Taxpayer Advocate, and withheld from plaintiff, Pl.'s Supp. at 1, plaintiff has failed to plead any facts supporting his underlying assumption that a written determination concerning his claim was prepared by the Office of Chief Counsel. Therefore, plaintiff cannot establish that he or anyone else could be the "recipient" of a document as to which the Secretary of the Treasury could have "failed to follow the procedures in [26 U.S.C. § 6110](i)(4)(B)." 26 U.S.C. § 6110(j). Because plaintiff has failed to allege any facts to establish this threshold requirement of Section 6110(j), the court finds that defendant is entitled, under Rules 12(b)(6) and 56, to judgment as a matter of law.

### 3.   Plaintiff's Claim is Not Justiciable

■   The court also notes an alternative basis for granting defendant's RCFC 12(b)(6) motion: This court lacks power to grant the remedy sought by plaintiff in his complaint— "$122,010.95 ..., [the amount of] the July 2004 judgment" in his prior litigation with defendant. Compl. at 21.[10] Plaintiff's unpaid tax liability was reduced to judgment, *see* 26 U.S.C. § 6672, following litigation on the merits in the district court. *See generally Ullman I,* 2001 WL 1346348; *Ullman II,*

---

10.   Nor can this court grant plaintiff's "[a]dditional request ... that this court order[ ] the Department of Justice to refrain from enforcing/collecting the judgment of $112,010.95 ... while this current action is ongoing." Compl. p. 21.   The Anti–Injunction Act, 26 U.S.C. § 7421(a) (2000), bars plaintiff from bringing suit "for the purpose of restraining the assess-

ment or collection of any tax." This statute provides that "once a tax has been assessed, a taxpayer is powerless to prevent the Internal Revenue Service from collecting that tax.... The taxpayer's recourse is to pay the tax and then bring suit for a refund of the tax." *Stiles v. United States,* 47 Fed.Cl. 1, 2 (2000) (citation omitted).

2002 WL 373350; *and Ullman III*, 2002 WL 987998. The proper course for a dissatisfied litigant to redress legal errors is through appeal, not by collateral attack on the judgment in a separate lawsuit. *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, 731–32 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1009, 108 S.Ct. 705, 98 L.Ed.2d 656 (1988) ("[Plaintiff's] avenue to redress any legal errors committed in [prior] decisions was to appeal."). Plaintiff fully availed himself of his right to appeal, and the district court's judgment is final. *See generally Ullman IV*, 55 Fed.Appx. 105 (3d Cir.2003), *cert. denied*, 540 U.S. 950, 124 S.Ct. 419, 540 U.S. 950 (2003), *and pet. for reh'g denied*, 541 U.S. 957, 124 S.Ct. 1707, 158 L.Ed.2d 394 (2004). Plaintiff may not collaterally attack an adverse district court ruling by initiating an action in this court that, in effect, seeks a refund of that same judgment. "Even though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment." *Miller v. Meinhard–Commercial Corp.*, 462 F.2d 358, 360 (5th Cir.1972) (citation omitted). Such relitigation of claims and issues through collateral attack is barred by the principles of res judicata and collateral estoppel. *See MGA*, 827 F.2d at 731–32; *Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1314–15 (Fed.Cir.1983).

"Even where a court possesses jurisdiction to hear a claim, it may not do so in cases where the claim presents a nonjusticiable controversy—*i.e.*, the claim is such that the court lacks 'ability to supply relief.'" *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed.Cir.1995) (quoting *Murphy*, 993 F.2d at 872); *see also Moehl v. United States*, 34 Fed.Cl. 682, 687–88 (1996) ("A justiciable controversy is one where a court can judicially identify the duty asserted, judicially determine a breach of that duty and judicially mold an adequate remedy.") (citing *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). Because the court would unable to grant the relief sought in plaintiff's complaint, the court concludes that plaintiff has failed to state a valid claim and that defendant is entitled to judgment on that alternative basis.

### III. Conclusion

For the foregoing reasons, defendant's Motion to Dismiss is GRANTED and plaintiff's Motion for Summary Judgment is DENIED. The first count of plaintiff's complaint shall be dismissed with prejudice. The second count of plaintiff's complaint shall be dismissed without prejudice. The Clerk of the Court shall ENTER JUDGMENT for defendant. No costs.

IT IS SO ORDERED.